(No. 4791.   May 4, 1928.)

CHRISTINA FORBUSH, Respondent, v. SAN DIEGO FRUIT & PRODUCE COMPANY, a Corporation, Appellant.

[266 Pac. 659.]

C. E. Crowley, for Appellant.

234

James S. Byers, for Respondent.

236

GIVENS, J.—Plaintiff was the owner of the land on which the potatoes hereafter referred to were raised but had leased it to one Haderlie. In 1921 Haderlie subleased it to two Japanese, J. Oyama and Y. Nakio, taking a crop mortgage covering the 1921 and 1922 crops to secure two notes given by the lessees for $2,000 each, the amount of the annual rental.

In May, 1922, a mortgage covering certain specified crops on this same land was given to the Idaho Agricultural Loan Company to secure a note for $200. This was signed by J. Oyama and Ko Oyama, his wife.

Both of these mortgages were assigned in due course to the plaintiff, Mrs. Forbush.

During the fall of 1922, and while Oyama was still in possession of the Forbush ranch, approximately 121,000 pounds of potatoes were hauled from the ranch to a warehouse in Idaho Falls. The mortgagee, asserting her lien under the mortgages after the same were due, demanded the possession of the potatoes. Her demand was refused. Thereafter this action was brought to recover the value of the crops alleged to have been converted. The plaintiff had judgment for the full amount of her claim.

The defendant has appealed, making numerous assignments of error, only five of which it is necessary to notice.

1. It is urged that the trial court has erred in admitting certain evidence showing deliveries after respondent had failed and refused to specify such deliveries in a bill of particulars demanded by appellant.

The office of a bill of particulars is to inform the party demanding the same of the causes of action or defenses to be relied on at the trial not specifically set forth in the complaint or answer. Its purpose is not to compel the adverse party to reveal his evidence. (*Intermountain Association of Credit Men v. Milwaukee Mechanics' Ins. Co.*, 44 Ida. 491, 258 Pac. 362; *Blackburn v. Washington Min. Co.*, 19 Wash. 361, 53 Pac. 369.)

Furthermore, where the party demanding a bill of particulars has presumably better knowledge than the party

from whom it is demanded, the latter will not be compelled to submit such a bill. (*Church v. Spiegelberg,* 33 Fed. 158; *American Transfer Co. v. Borgfeldt & Co.,* 99 App. Div. 470, 91 N. Y. Supp. 209; see, also, 31 Cyc. 579.)

In the present case, appellant demanded of the respondent particulars in regard to the alleged deliveries of certain potatoes by the mortgagors. Respondent had alleged that these potatoes had been delivered to appellant's own warehouse. The evidence established such deliveries. Obviously, appellant had better knowledge of these transactions, or was in a better position to secure it from its own books than was respondent. Therefore, even if the appellant was entitled to the information demanded, no prejudice resulted from a failure to give it.

2. It is urged that the crop mortgage given by Oyama and Nakio to Haderlie, and by him assigned to the respondent, is invalid because it was not signed by the wife of Oyama.

Assuming, without deciding, that a third party can question this defect where it appears in a mortgage otherwise valid, it need only be pointed out that nowhere in the evidence does it appear that at the time the mortgage was given, either of the mortgagors was married. It does appear that Oyama was married in May, 1922, but the mortgage in question was given in March, 1921. Rights created by the mortgage at the date of the mortgage could not be destroyed by the subsequent marriage of one of the parties.

3. Appellant contends that respondent erred in bringing an action for conversion. It is urged that under C. S., sec. 6949, there can be but one action for the recovery of a mortgage debt and that the mortgagee should have proceeded to have foreclosed her mortgage and, in the same action, by joining all the parties involved, have recovered any damages which she had suffered by reason of the conversion.

The pertinent part of C. S., sec. 6949, is as follows:

"There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage

upon real estate or personal property, which action must be in accordance with the provisions of this chapter."

The statute then provides for the sale of the encumbered property under a court order and the entry of a deficiency judgment for the balance of the debt not covered by the proceeds of the sale.

This statute follows as a natural corollary of the proposition, which is well established in this state, that a chattel mortgage conveys no title to the mortgagee, but gives a mere lien on the property mortgaged as security. (C. S., sec. 6360.) Following default, the mortgagee must take some affirmative action to divest the mortgagor of his title to the mortgaged goods, and it was to protect the mortgagor from the necessity of defending himself against a multiplicity of actions which might be brought both on the debt and for the enforcement of the security that this statute was enacted. (*Martin v. Becker,* 169 Cal. 301, 146 Pac. 665.)

In the case just cited the supreme court of California was construing a statute identical with the one under consideration herein. The court held that its sole purpose was to protect the mortgagor and that it "has no applicability whatsoever unless the action which is brought directly affects his rights under the mortgage contract." (See, also, *Knowles v. Sandercock,* 107 Cal. 629, 40 Pac. 1047.)

On a number of occasions this court has construed the meaning of the "one action" referred to in C. S., sec. 6949, and an analysis of the cases indicates that in its interpretation it has reached the same conclusion as the California court.

In all of the cases where the question has arisen in this state, the facts were somewhat similar to those in the case at bar, involving the conversion of mortgaged chattels either before or pending foreclosure of the mortgage. In each case the mortgagee brought an action in claim and delivery and, where the facts showed the action to have been brought against one other than the mortgagor, recovery was allowed. (*Cederholm v. Loofborrow,* 2 Ida. 191, 9 Pac.

641; *O'Neill v. Whitcomb*, 3 Ida. 624, 32 Pac. 1133; *First National Bank v. Steers*, 9 Ida. 519, 108 Am. St. 174, 75 Pac. 225; *Adams v. Caldwell Milling Co.*, 33 Ida. 677, 197 Pac. 723; *Berg v. Carey*, 40 Ida. 278, 232 Pac. 904; *Portland Cattle Loan Co. v. Biehl*, 42 Ida. 39, 245 Pac. 88.)

In *O'Neill v. Whitcomb, supra,* the court, replying to the contention that an action in claim and delivery was not the "one action" contemplated by C. S., sec. 6949, said:

"It is sufficient answer to this claim to say that this is not an action 'for the recovery of any debt or the enforcement of any right secured by mortgage' but it is an action to recover the possession of the security of which the mortgagee has been wrongfully deprived, in order that thereby he may, by a foreclosure and sale, under the provisions of the mortgage, recover the debt and enforce the rights secured him by the mortgage. . . . . Of what avail would it be to the mortgagee of personal property to foreclose his mortgage upon property not in his possession and of the very existence of which he has no assurance."

In the latest case before this court in which this question has been raised, *Portland Cattle Loan Co. v. Biehl*, 42 Ida. 39, 245 Pac. 88, the court said:

"Claim and delivery is not the 'one action' to foreclose a mortgage (C. S., sec. 6949) and it may be maintained against a stranger for the possession of the mortgaged chattels, where the mortgage entitles the mortgagee to possession therefor. (*First National Bank of St. Anthony v. Steers*, 9 Ida. 519, 108 Am. St. 174, 75 Pac. 225.) Even though claim and delivery were the 'one action,' respondent here is not the mortgagor and it is by no means certain that he could raise that question."

The reasoning of these cases, and other reasons enumerated hereafter, support the soundness of the rule permitting the mortgagee to protect his interests, independently of the mortgage, where his mortgaged property has passed into the hands of third parties. The cases cited above, it is true, are concerned with the right to bring an action in claim and delivery. But even more cogent reasons compel

the conclusion that the mortgagee can likewise protect his interests by bringing an action in conversion.

The purpose of an action in claim and delivery is to recover the security under the mortgage in order that foreclosure proceedings may be successfully concluded. (*First National Bank v. Steers, supra.*) To that extent, at least, an action of this kind is concerned with the enforcement of a right secured by a mortgage referred to in C. S., sec. 6949. But an action in conversion against a third party has no connection whatever with the mortgage security, as such, and certainly has nothing to do with the mortgage debt. It is solely an action for damages for wrongful interference with the mortgaged security—the property of the mortgagee. (*Howard v. Burns,* 44 Kan. 543, 24 Pac. 981; *Stewart v. Long,* 16 Ind. App. 164, 44 N. E. 63.) Consequently, C. S., sec. 6949, has no application.

But even if an action in conversion against a third party is concerned with the security of the mortgage, there is another reason why a statute requiring foreclosure has no application in such a situation. Foreclosure is designed to cut off the rights of the mortgagor, on the one hand, and, on the other, to protect the mortgagee by realizing on the security. But when the mortgagor disposed of the mortgaged goods to a third party, he just as effectively deprived himself of all interest in the property as though he had been made a defendant in foreclosure proceedings and a decree had been entered against him. Between the mortgagor and his grantee, the former is estopped to question the completeness of his own title. (*Frizzell v. Rundle & Co.,* 88 Tenn. 396, 17 Am. St. 908, 12 S. W. 918.) Hence, if one of the objects to be accomplished by foreclosure has been just as effectively accomplished in another way, it cannot be assumed that the legislature intended to prescribe a useless proceeding in requiring foreclosure before permitting an action in conversion.

Likewise, if the property in question has passed into the hands of third parties and even more remote grantees, and may possibly not even be in existence, which was the situ-

ation involved in the case at bar, what an idle proceeding it would be to require the mortgagee to attempt to realize, by foreclosure, on security, the whereabouts of which are unknown, or which may not even exist.

A consideration of the development of the modern law of chattel mortgages leads to the same conclusion.

■ Under the common law, a chattel mortgagee had both title to and possession of the mortgaged goods. If the property had been taken from his possession, it is apparent that he could have maintained an action in conversion. In many jurisdictions, including this state, it is now held that the chattel mortgagee has not title but only a lien on the security, possession being in someone else. But if the mortgage provides that the mortgagee can take possession of the mortgaged goods for breach of the conditions of the mortgage, it is quite generally held that he may maintain conversion against third parties into whose hands the goods may have fallen. The courts hold that breach of the conditions of the mortgage, coupled with the right to possession, give him such a qualified ownership as will enable him to maintain an action of this kind. (*Backus v. Buells,* 43 Or. 558, 72 Pac. 976, 73 Pac. 342; *First Nat. Bank v. St. Anthony & Dakota Elevator Co.,* 103 Minn. 82, 114 N. W. 265; *Cone v. Ivinson,* 4 Wyo. 203, 33 Pac. 31, 37, 35 Pac. 933.)

■ This common-law right of action for conversion cannot be abridged except by an express statutory enactment, and we fail to see how a statute providing for "one action" in foreclosure against the mortgagor limits this right. (*La-Rue v. St. Anthony & Dakota Elevator Co.,* 17 S. D. 91, 95 N. W. 292.)

4. It is urged that the evidence did not establish conversion, assuming an action for conversion to have been the proper remedy. In this connection, it is also urged that the court erred in rejecting evidence tending to show that appellant handled all its potatoes on a commission basis.

■ We believe that the evidence establishes conversion. There was a sufficient showing that the potatoes

had been delivered to appellant's warehouse. Upon learning of these deliveries, the respondent instructed her attorney to make a demand for the same. This demand was made and refused, the appellant justifying its refusal on the ground that it held a prior mortgage and therefore a superior lien. This claim was later proved to be false. At the trial appellant offered to prove that the potatoes had been destroyed as worthless. But in either event there had been a conversion. Any unauthorized act which deprives an owner of his property permanently or for an indefinite time is a conversion. (*Hill v. Campbell Commission Co.*, 54 Neb. 59, 74 N. W. 388; Webb's Pollock on Torts, p. 432.) If a third person, without the consent of the mortgagee, appropriates or destroys mortgaged property, he is guilty of conversion. (*Twin Falls Bank & Trust Co. v. Weinberg*, 44 Ida. 332, 257 Pac. 31; *Buffalo Pitts Co. v. Stringfellow-Hume Co.*, 61 Tex. Civ. App. 49, 129 S. W. 1161.)

It was necessary, of course, for the respondent to prove her property in the potatoes and also a right to immediate possession of them at the time of the conversion, in order to maintain this action. The mortgages sufficiently established the plaintiff's right of property. By their terms they specifically provided that upon harvesting of the potatoes, the mortgagee would be entitled to immediate possession of the crop.

The rejection of the evidence dealing with the appellant's status as a commission merchant was not error. There is some conflict among the authorities as to whether a chattel mortgage recorded under a statute similar to ours operates to give notice to a commission merchant who sells the mortgaged goods in the usual course of business, asserting no interest in the goods or the proceeds of the sale. (*Drovers' Cattle Co. v. Rice*, 10 Fed. (2d) 510; *Greer v. Newland*, 70 Kan. 315, 109 Am. St. 424, 78 Pac. 835, 70 L. R. A. 554; *Cone v. Ivinson*, 4 Wyo. 203, 33 Pac. 31, 35 Pac. 933, and cases therein cited.) C. S., sec. 6375 pro-

vides that "a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value" unless it is properly recorded with a suitable affidavit. But the evidence to which reference has been made above clearly shows that the status of appellant company in this transaction was not that of a mere commission merchant. When it destroyed them or refused to surrender them to the rightful owner, it asserted the most unqualified kind of ownership in the mortgaged crops, and by so doing it became charged with constructive notice of the mortgage and dealt thereafter with the mortgaged crops at its peril. (*Frizzell v. Rundle, supra.*)

But even if defendant had no notice, actual or constructive, of plaintiff's mortgage, there is another reason why its status as a commission merchant was immaterial. Appellant's contention that it was acting simply as a commission merchant is, in effect, an admission that it was acting as the agent of the mortgagor. The general rule is that an agent, however innocent, who wrongfully interferes with the property of another is liable in conversion. (*Burkett v. Doty*, 32 Cal. App. 337, 162 Pac. 1042, 1045; *Swim v. Wilson*, 90 Cal. 126, 25 Am. St. 110, 27 Pac. 33, 13 L. R. A. 605; *Cerkel v. Waterman*, 63 Cal. 34; *Brown v. Campbell Co.*, 44 Kan. 237, 21 Am. St. 274, 277, 24 Pac. 492; *Coles v. Clark*, 3 Cush. (Mass.) 399; *Kearney v. Clutton*, 101 Mich. 106, 45 Am. St. 394, 398, 59 N. W. 419; *Spraights v. Hawley*, 39 N. Y. 441, 100 Am. Dec. 452; Mechem on Agency, 2d ed., sec. 1457.)

If appellants purchased as commission merchants, they were subsequent purchasers and by the very terms of the statute charged with notice; if they acted only as brokers, they were the agents of the mortgagors and hence charged with notice of the mortgage.

5. It is urged that the evidence failed to establish that the potatoes delivered to the appellant were in fact potatoes covered by the mortgage.

C. S., sec. 6373, provides:

"Chattel mortgages may be made upon all property, goods or chattels, not defined by statute to be real estate, upon growing crops, and upon crops to be sown and grown in the future; but, should the persons executing mortgages upon crops to be afterwards sown, fail to sow or cause the same to be sown, no lien of such mortgages shall attach to crops sown by other persons upon the lands described in said mortgages, except in so far as the mortgagors in said mortgages have or retain interests in said crops."

It must therefore affirmatively appear that the crops on which a lien is claimed because of a crop mortgage were, in fact, sown by the mortgagor or caused to be sown by him.

We believe that there is sufficient evidence to establish that the potatoes grown on the Forbush ranch were raised by or under the direction of at least one of the mortgagors. The evidence shows without contradiction that there were two Japanese on the Forbush ranch. Two witnesses agreed that one of these was Oyama and this was not contradicted. They disagreed on the identity of the other. Mr. Haderlie, who lived on a ranch next to the Forbush ranch and as agent of Mrs. Forbush kept his eye on what went on there, testified that the two Japanese on the place were the two who had given the mortgage, Oyama and Nakao. He further testified that Oyama was the one who was having the potatoes hauled, and that the other one was helping dig them. Appellant made an offer to prove by one of its witnesses that a contract had been made with Oyama by the appellant company whereby the latter was to accept the potatoes grown on the Forbush ranch on a commission basis. The offer was refused, but it, and the other evidence cited above, shows clearly enough that the potatoes were being grown under the direction and supervision of Oyama.

That the potatoes so grown were the ones actually delivered to the warehouse of appellant is equally clear. Two draymen testified that they had hauled 121,000 pounds of

potatoes from the ranch to the warehouse in October, 1922. The testimony of Mr. Byers, the attorney for the respondent, to which reference has been made above, that appellant's agent admitted receiving the potatoes but refused to surrender them, is further proof that the potatoes were in fact received by the appellant.

Much is made of the fact, by the appellant, that some of the load slips of the hauling company bear the name of "Sugawara" as the party for whom the potatoes were hauled. There is ample evidence to connect "Sugawara" with Oyama and the Forbush ranch. Some of the slips, for instance, bear the names of both Oyama and "Sugawara" and indicate that the potatoes were being hauled from the Forbush ranch. But even without such evidence, the mere fact that the delivery was made by one not the mortgagor does not establish that the crops were not raised by the mortgagor where there is evidence to the effect that they were. (*Polytinsky v. Patterson,* 3 Ala. App. 302, 57 So. 130, 132.)

If the potatoes were raised by or under the direction of Oyama and Nakao, or either of them, the lien of the mortgage would continue, though they passed into the hands of a subvendee from whom defendant got them. (*Chadwick v. Russell,* 117 Ala. 290, 23 So. 524.)

The lien would also continue though the mortgaged crops had been tortiously removed and disposed of without the consent of either the mortgagor or the mortgagee. (See Jones on Chattel Mortgages, 5th ed., sec. 69.)

Under either assumption, the crops having been raised by the mortgagor, and assuming "Sugawara" to have had an identity apart from the mortgagors, the defendant could not have obtained a good title against the mortgagee.

Appellants also urge that respondent has lost her right to bring this action because she took over certain of the property mortgaged and disposed of it without foreclosing, relying on *Rein v. Callaway,* 7 Ida. 634, 65 Pac. 63. The property consisted, according to the record, of certain hay and potatoes left on the place.

With regard to the potatoes, the only testimony relating to them shows that they were worthless and nothing was received by respondent for them and that they became worthless through no fault of hers. Such a situation was expressly excepted from the operation of and holding in *Rein v. Callaway, supra.*

The testimony shows that there is still some hay on the place and that some was sold for about $25.00. The total amount of hay was about 25 tons. Appellant did not show or offer to show the value of the hay left on the place. There is nothing to show that the hay sold and unsold exceeds the difference between the amount asked for and allowed in this case and the total amount due by reason of the two chattel mortgages owned by respondent and considered herein.

The respondent took possession of such hay not wrongfully but with the consent and at the express request of the mortgagor. Her disposition thereof was, therefore, not wrongful.

Appellant asked for a new trial on all the grounds above considered and also because of certain alleged newly discovered evidence. The showing does not sufficiently disclose that this evidence could not have been secured prior to the trial and hence does not require the conclusion that the trial court abused its discretion in denying the motion.

The other points relative to a new trial have been substantially considered above.

It appearing that no errors of law were committed, and that there was ample evidence to sustain proof of the conversion of crops covered by the mortgages, the judgment and order denying a motion for a new trial are affirmed.

Costs to respondent.

Wm. E. Lee, C. J., and Budge and T. Bailey Lee, JJ., concur.

Petition for rehearing denied.