## FARR v. WASATCH CHEMICAL CO.

No. 6627.  Decided November 13, 1943  (143 P. 2d 281.)

*Samuel J. Nicholes*, of Salt Lake City, for appellant.

*David J. Wilson*, of Ogden, for respondent.

WOLFE, Chief Justice.

Ella P. Farr, respondent, brought this action against the Wasatch Chemical Company, the appellant, upon a written lease to recover unpaid rent which was admittedly in arrears; to recover for damages to the leased premises; and for attorney's fees in accordance with an express term in the lease. The defendant admitted the rental arrears, and by affirmative answer and counterclaim alleged that the parties had made an oral agreement outside and collateral to the written lease which oral agreement the respondent had not satisfactorily performed. The court found in favor of the plaintiff on all issues and the defendant appealed.

The evidence discloses that the parties entered into a written lease under the terms of which the plaintiff leased a warehouse to the defendant for one year. Both parties understood that the premises were to be used as a storage warehouse. At the time of the effective date of the lease when the defendant took possession, the warehouse was equipped as a feed mill. Before it could be suitably used as a warehouse this feed mill machinery had to be removed and the floors repaired where the machinery had been. The lease is silent as to who was to remove this machinery and repair the floors so as to make the premises tenantable. However, the uncontradicted evidence shows that the plaintiff undertook to do this work.

The defendant entered into possession and for a year paid the rental installments as agreed. The lease gave the lessee an option to renew the lease from year to year at an "annual rental to be agreed upon between the parties." On January 8, 1942, defendant exercised this option. The new rental was fixed at $75 per month. Defendant continued to occupy the premises until July 1, 1942, at which time plaintiff requested the defendant to vacate. It is admitted by both parties that the rental was not paid for the months of May and June.

The issues raised by this appeal revolve around the counterclaim interposed by the defendant. The uncontradicted evidence discloses than in the spring of 1942, a section of the warehouse floor caved in under the load which had been placed upon it by the defendants. The contractor hired by the plaintiff to repair the break testified that it cost $174 to make the repairs. Plaintiff seeks to recover this $174 in addition to the rental arrears.

By its answer and counterclaim the defendant asserted that the plaintiff orally agreed to strengther the floors and that if the floors had been so strengthened, they would have supported the load placed upon them. Defendant also alleged that:

"The plaintiff, being apprised and knowing the nature and kind of business in which the defendant was engaged, covenanted and agreed with said defendant to place that certain warehouse existing upon the above said premises in good and serviceable condition for the immediate occupancy and benefit and use of the said defendant, and further the said plaintiff specifically agreed to repair and maintain the roof, elevator and floors of the above warehouse in good, safe and serviceable condition * * *."

The trial court, in entering judgment, apparently concluded that this allegation and the evidence adduced in support of it were in conflict with the terms of the written lease and that the evidence so adduced was therefore incompetent.

The provision of the written lease with which it is urged that this evidence was in conflict, provides:

"Lessor shall keep the floor and roof in good repair, except as to damages caused by Lessee, at her expense so as to keep said premises tenantable; all other repairs and alterations after occupancy shall be done at the Lessee's expense."

Certainly the allegation that the plaintiff agreed to "maintain" the "elevator" in serviceable condition in addition to repairing the floor and roof, is in direct conflict with the written lease. The lease expressly provides that all repairs after occupancy other than repairs to the floor and roof should be made by the lessee at its expense. Evidence given in an attempt to show that plaintiff had orally agreed to repair and maintain the elevator was designed to vary the terms of a written instrument and was therefore incompetent.

The allegation that plaintiff agreed to "place" the warehouse in a serviceable condition for the intended uses, stands in a somewhat different light. The evidence shows that both parties knew that this warehouse was to be used for storing heavy chemicals. It was not suitable for contemplated use until the feed mill machinery was removed and the floors repaired. The written lease apparently was not designed to govern this situation. It provided that

plaintiff was to "keep" the floors and roof in repair so as to "keep said premises tenantable" thus indicating that the warehouse was to be tenantable. Under the lease the lessee was to make repairs and alterations on all parts except the roof and floors but only "after occupancy." Witnesses for the defendant testified that plaintiff had orally agreed to make the premises tenantable. Letters admitted in evidence as having been written by the plaintiff, clearly shows that she undertook to remove the machinery and repair the floors. The contractor who did the work testified that after the machinery was removed, the floors were placed in their original state of repair. However, witnesses for defendant company testified that under the oral agreement the floors were also to have been reinforced and strengthened. There is further evidence indicating that the plaintiff, in removing the feed mill machinery, weakened the elevator shaft so as to make it dangerous and unsafe to use, thus depriving defendant of the use of the elevator and of two floors of the warehouse. There was no attempt made to rebut this testimony regarding the alleged collateral agreement.

To sustain the ruling of the court that the evidence of this prior collateral agreement was incompetent, counsel invokes the principle that parol evidence is not admissible to contradict, add to, or vary, the terms of a written instrument. The rule is, of course well established, but it has no application here. The problem of ascertaining when the rule applies to a given fact situation is discussed by Wigmore, Sec. 2430 of his work on Evidence. It is there stated:

"The inquiry is whether the writing was intended to cover a certain subject of negotiation; for if it was not, then the writing does not embody the transaction on that subject * * *. Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto * * *. This intent must be sought * * * in the conduct and language of the parties and the surrounding circumstances * * *. The question being whether certain subjects of negotiation were intended to be covered,

we must compare the writing and the negotiations before we can determine whether they were in fact covered. * * * In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation."

Here the alleged oral agreement does not in any way attempt to vary or contradict the terms of the written agreement. The written lease was apparently designed to define rights and duties after occupancy. The language "keep said premises tenantable" indicates that the parties understood the warehouse would be made tenantable. The alleged oral agreement purports to control the making of repairs and alterations which were necessary to make the warehouse tenantable. Such an agreement if in fact made would be collateral to the written lease. It could be proved and enforced although not reduced to writing nor incorporated in the written lease. As pointed out in *Creek* v. *Lebo Inv. Co.*, 85 Colo. 357, 276 P. 329, 331:

"The things that ordinarily are required to be done by a lessor and a lessee after the tenancy has commenced are naturally, and usually, provided for in the written lease. But there are other matters that may be, and that not infrequently are, provided for by oral agreement rather than in a written lease; such, for example, as those that relate to placing the premises in conditions fit for leasing, in preparation for leasing, and as an inducement to a prospective tenant to take a lease of the premises. Such matters need not be provided for in the written lease, even though the oral agreement has not been performed, or fully performed, at the time the lease is executed. Such an oral agreement does not contradict, add to, or vary the terms of the written lease, but is an independent agreement, capable of enforcement."

To the same effect see *Frosh* v. *Sun Drug Co.*, 91 Colo. 440, 16 P. 2d 428; *Knight* v. *Potter*, 147 Or. 339, 32 P. 2d 1014; *Graffam* v. *Pierce*, 143 Mass. 386, 9 N. E. 819; *Clenighan* v. *McFarland*, 16 Daly 402, 11 N. Y. S. 719.

The evidence adduced to show this alleged oral agreement was competent. It was not contradicted. The order dismissing the counterclaim was erroneous. Judgment reversed and the cause remanded for new trial. ■ Costs to appellants.

LARSON, McDONOUGH, MOFFAT, and WADE, JJ., concur.