**PRODUCERS LIVESTOCK LOAN COMPANY, a Corporation, Appellant,**

v.

**IDAHO LIVESTOCK AUCTION, Inc., a Corporation, Appellee.**

No. 14754.

United States Court of Appeals Ninth Circuit.

Feb. 24, 1956.

---

Hadlond P. Thomas, Thomas & Armstrong, Frank Armstrong, Edward M. Garrett, Salt Lake City, Utah, A. L. Merrill, Pocatello, Idaho, for appellant.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, Idaho, for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Idaho, Eastern Division, denying appellant recovery of damages for conversion of cattle on which it held a mortgage. Appellant contends that the District Court erred in construing a contract as discharging its cause of action here in issue. Appellant also contends that the evidence does not support the District Court's finding that by its conduct appellee waived its rights under the mortgage which prohibited sale of the cattle without its consent. The latter contention we do not consider since we affirm the judgment that by contract appellant waived its rights to recover for the conversion.

Appellant loaned one Galbraith large sums of money, taking mortgages on his cattle. The mortgages prohibited sale of the cattle without the appellant's permission. They were recorded in the county in which were the cattle and in the offices of Idaho's Secretary of State. Under the Idaho law, an agent of Galbraith has the same liability as Galbraith if he sold the cattle without the consent of the appellant mortgagee. Forbush v. San Diego Fruit & Produce Co., 46 Idaho 231 at page 245, 266 P. 659.

Appellee is a livestock commission firm operating on the public stockyards at Idaho Falls. Galbraith on four occa-

sions delivered mortgaged cattle to appellee, and it sold them for a total of $9,804.12, which it paid over to Galbraith. The appellant did not give its consent to these sales, and it did not receive the proceeds paid to Galbraith.

Appellant upon discovering the shortage of cattle threatened Galbraith with prosecution unless he turned over his ranch to it. Galbraith and appellant entered into a contract defining their rights, Galbraith deeded his ranch and the cattle to appellant, and it sold the ranch for an amount far less than the total owed to it by Galbraith. The appellant then commenced this suit against appellee for conversion.

The agreement consisted of a letter to appellant from Galbraith and his wife signed by them, on which appellant signed a statement that it was accepted and approved by it. The pertinent portions are:

> "Part of said livestock has been sold or disposed of by us, and we now desire to transfer the balance thereof (with other personal property and real estate) for you to handle and sell for our account and credit upon said mortgages. Therefore in consideration of your accepting said livestock and property for the purposes hereinafter stated and of $1.00 *and other valuable consideration*, receipt of which is hereby acknowledged, we have this day executed and delivered a bill of sale and quit claim deed and have transferred, assigned and conveyed to you all of said livestock remaining, together with (cer)tain farm machinery, equipment and real estate in Custer County, Idaho, and do hereby agree as follows:

> "1. That said bill of sale and the transfer evidenced thereby do not cancel or discharge said chattel mortgages, or either of them, but the same and the debt or debts secured thereby remain in full force and unaffected, and no merger of said mortgages results by said transfer." [Emphasis supplied.]

Since the consideration to the Galbraiths is in part expressed in the phrase "$1.00 and *other valuable consideration*" the question is whether parol evidence is admissible to determine the character of the "other valuable consideration".

■ The general view is that the parol evidence rule is a matter of substantive law and not a rule of evidence. Wigmore on Evidence, 3rd ed., § 2400. Cf. Anderson v. Owen, 9 Cir., 205 F.2d 940, 941. Since the contract was executed in Utah where there are no cases determining the question, we hold that it is the law of that State. The contract as well could be performed there.

■ The law of Utah on the admission of parol evidence is stated in Farr v. Wasatch Chemical Co., 105 Utah 272, 143 P.2d 281, 283, 151 A.L.R. 275 and Paloni v. Beebe, 100 Utah 115, 110 P.2d 563. The Farr case states it to be as stated in Section 2430 of Wigmore on Evidence reading:

> " 'The inquiry is whether the writing was intended to cover a certain subject of negotiation; for if it was not, then the writing does not embody the transaction on that subject * * *. Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto * * *. This intent must be sought * * * in the conduct and language of the parties and the surrounding circumstances * * *. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. * * * In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiaton is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writ-

ing was meant to represent all of the transaction on that element; *if it is not, then probably the writing was not intended to embody that element of the negotiation.'* "

■ We think that parol evidence is here admissible to show the "intent of the parties" with respect to the provision for "other valuable consideration".

Galbraith testified that the purpose of the contract was "to settle for those cattle that I sold and had not remitted on" and further testified that "The reason for signing those deeds was to clear ourselves of the criminal action *and to square that deal where we sold the cattle and had not remitted the money.*" [Emphasis added.]

This testimony was not contradicted though appellant's officer who had negotiated the contract was present at the trial. The court believed Galbraith's testimony and made its finding:

"XI.

"That the transfer and conveyance of said ranch and farming equipment were intended by the plaintiff and said L. B. Galbraith and Bertha A. Galbraith, his wife, as a full and *complete settlement for the cattle so sold* through defendant's sales yard and not remitted for, and were accepted by plaintiff as such, and the same constituted and constitutes a full and complete settlement therefor." [Emphasis added.]

and rendered its judgment "that the plaintiff is not entitled to judgment in any amount against defendant herein."

■ It is contended that the portion of finding X respecting the conveyance of the Galbraiths, reading that it was for the "agreed purpose of paying plaintiff [appellant] for the cattle so sold through defendant's [appellee's] sale yard" is not warranted by the evidence and that the agreement should be interpreted as covering no more than that the conveyance was made to replace and stand in lieu of the plaintiff's lien

upon the cattle so sold through defendant's sale yard and to release plaintiff's right to sue for or recover such cattle. With this contention we agree. This would leave them still liable for the total amount of the mortgage debt as the writing stated.

Since this finding as made contradicts the writing, the judgment cannot stand with Finding X in its present form. Accordingly the case is remanded for findings having in mind what has been said herein on the question of whether the conveyance of the Galbraiths' property was made to replace and stand in lieu of the plaintiff's lien upon the cattle so sold through defendant's sale yard and to release plaintiff's right to sue for or recover such cattle.

Remanded.

POPE, Circuit Judge (concurring).

I am in agreement that the parol evidence was admissible. I think also that it was admissible wholly apart from whether the words "and other valuable consideration" were, or were not, inserted in the writing.

The most profitable way to approach the problem before us is to take that part of Mr. Wigmore's § 2430 which appears on page 98 of Vol. IX and apply it to the situation shown in the record here. As Mr. Wigmore says: "The answer depends wholly upon the intent of the parties." That intent must be sought "in the conduct and language of the parties and surrounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover."

The following circumstances are significant here:

1. This was not a case where the parties walked into a lawyer's office, told him their problem and asked him to put their arrangements in writing. The written instrument here was drawn by the loan company and presented to the mortgagor on a "take it or leave it" basis. The latter had no opportunity to suggest any of its terms.

2. The writing is completely unilateral in that it contains statements of what mortgagor does and agrees to do but says nothing whatever about what is the inducement or consideration which he is to get or as to why he is executing it. In fact, it is written in the form of a letter signed by the mortgagor and addressed to the loan company. Any reference to any promise or undertaking on the part of the loan company is purely illusory. Thus it says: "In consideration of your accepting said livestock and property for the purposes hereinafter stated,", etc. That is like saying "In consideration of your accepting the money and doing with it as you please I promise to pay you $500." The "purposes hereinafter stated" are exclusively the purposes of the loan company. Those are to have and receive the money.

3. It would stretch one's credulity to believe that it was the understanding of these parties that this unilateral letter was the whole arrangement between them.

The trial judge on the basis of credible testimony which the appellant did not even try to contradict, found that there was something more to this arrangement and his finding accords in general with what seems to me to be the natural and probable understanding of the parties. Galbraith was in trouble because he had sold the cattle. He was called on the carpet. He testified: "We talked about the shortage on the cattle and what we were going to do about it. We discussed several different propositions of how to handle the situation and there was a matter come up about what was going to be paid. They told me that I would have to deed my ranch and my machinery to them, which they held no mortgage on at all, to settle for these cattle that I had sold and had not remitted on. * * *"

It seems to me that what the trial judge was doing is covered by the following language in § 2430 of Wigmore above referred to. "There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, pro or con, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that if they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that· if they did, they are legally effective, and he then leaves to the jury the determination of the fact whether they did take place." Notice particularly the last sentence quoted. It seems to me that in receiving the evidence and making findings on it, he made the decision there mentioned. On the record as made the trial judge had the right to do just that.