435 P.2d 47

**ARIZONA TITLE INSURANCE & TRUST COMPANY, Appellant,**

v.

**J. Maurice HUNTER and Edna V. Hunter, Appellees.**

**No. 2 CA–CIV 373.**

Court of Appeals of Arizona.

Jan. 10, 1968.

Rehearing Denied Feb. 6, 1968.

Review Granted March 12, 1968.

Stuart Herzog, Tucson, for appellant.

Dowdall, Harris, Hull & Terry, by Richard J. Dowdall, Tucson, for appellees.

KRUCKER, Judge.

Defendant, Arizona Title Insurance & Trust Company, appeals from a judgment against it in favor of the plaintiffs, J. Maurice and Edna V. Hunter.

Plaintiffs entered into a preliminary sales agreement with appellant, Arizona Title Insurance & Trust Company, which was acting for defendant Royal Properties, Inc., for the sale of plaintiffs' land and the improvements thereon to defendant Royal Properties. Defendant Arizona Title Insurance & Trust Company prepared a trust agreement, naming itself as trustee and the plaintiffs and defendant Royal Properties first and second beneficiaries, respectively. A copy of the trust agreement was delivered to plaintiffs who voiced certain objections to it. As a result of these objections, plaintiffs met with appellant's trust officer. An amendment to the trust agreement was drawn. The original trust agreement provided in part:

### SECTION VI.

"A. Any provisions of this Trust Agreement to the contrary notwithstanding, whenever Second Beneficiary is not in default hereunder, then Second Beneficiary shall be entitled to direct Trustee to convey, and Trustee is authorized to convey to Second Beneficiary or Second Beneficiary's nominees, heirs

or assigns, the legal title to the above-described property *for the purpose of allowing the recordation of any mortgage or mortgages conveying said property as security for any loan (including any refinancing, renewal, or increase thereof), in connection with the existing improvements or the construction of any other improvements,* title to any portion so conveyed to be immediately reconveyed to the Trustee and to be thereafter governed by the terms of this Trust Agreement subject to said mortgage. (Emphasis supplied)

\* \* \* \* \* \*

"C. Any such conveyance or reconveyance of such legal title shall be accomplished by the consecutive recordation by Trustee, without the intervention of any other recorded document, of: first, a deed from Trustee to Second Beneficiary, or second Beneficiary's Nominee as Grantee; Second, a mortgage wherein said Grantee is the mortgagor; and third, a deed from said mortgagor to Trustee for the reconveyance of legal title subject to said mortgage on such portion. Any such conveyance of legal title to said Grantee shall not convey any beneficial interest in said portion, legal title to which is so conveyed; and the beneficial interest and ownership of said portion shall be governed by this Trust Agreement, the only right to be created by such conveyance to be the right to encumber such portion by a mortgage as above set forth. The *exercise of the rights granted in this paragraph shall create a valid mortgage lien prior and superior to the interest of all Beneficiaries,* their successors and assigns, on said portion so conveyed, but the exercise of said rights shall not create any other lien or encumbrance thereon." (Emphasis supplied)

The amendment to paragraph (A) consisted of the addition of the following words:

" \* \* \* it is understood that any funds from any mortgage or mortgages placed on the subject property *for the purpose of construction of any improvements shall be controlled and disbursed through 'Builder's Control'* with Arizona Title Insurance & Trust Company so that the First Beneficiary herein shall be assured that said funds are used soley (sic) for the construction of said other improvements and expenses in connection therewith." (Emphasis supplied)

The amendment was agreed to and the agreement was executed on December 24, 1963.

Thereafter, on March 19, 1964 a new mortgage was placed on the property and the existing first mortgage of record against the property was paid. Plaintiffs were neither notified of the mortgage nor paid any funds from it. At the time the new mortgage was placed on the property, there were no plans for construction of any improvements and no new improvements were built on the property up to the time of the filing of this action. The balance of the new mortgage monies, over and above the first lien and the cost of placing the mortgage, were paid to the defendant Royal Properties by defendant Arizona Title Insurance & Trust Company.

On April 16, 1965 plaintiffs sued both Royal Properties and the trustee. Defendant Royal Properties did not appear in this action. Default was entered against it and plaintiffs proceeded against the trustee only. At the pretrial conference the issues in the action were narrowed to whether or not the trustee had breached the terms of the trust agreement. Whether the trustee had breached a fiduciary duty through negligence or overreaching in drafting the trust agreement pursuant to plaintiffs' directions was not an issue in the case. Nor was there an issue of reformation of the trust agreement. At the trial of the case before the court sitting without a jury, the plaintiffs received judgment against the defendant trustee in the sum of $17,513.97 plus interest and costs.

At the trial, parol testimony concerning conversations and representations, made

before and at the time the amendment to the trust agreement was executed, was admitted in evidence over objection. The gravamen of the appeal is that it was error for the trial court to have admitted this parol testimony because the agreement was clear and unambiguous on its face. Defendant contends that trial court's act in admitting this parol testimony created the ambiguity upon which the trial court later based its opinion in holding for the plaintiffs.

The appellees' contention seems to be that they had grave doubts concerning the disposition of money which would result from mortgages placed on the property by the buyer, and that they expressed these doubts to the trustee, which expression resulted in the amendment to the trust. Appellees contend that the trustee assured them that the amendment satisfied their objections. Pertinent provisions of the trust agreement relating to mortgages are as follows.

SECTION VI(A) permits transfer of the legal title of the property from trustee to second beneficiary for the purpose of allowing the recordation of mortgage or mortgages:

> "* * * conveying said property as security for any loan (including any *refinancing, renewal, or increase thereof*), *in connection with the existing improvements* or the construction of any other improvement * * * the exercise of the rights granted in this paragraph shall create a valid mortgage lien prior and *superior to the interest of all beneficiaries.*" (Emphasis supplied)

The amendment to this provision provided:

> "* * * *any funds from any mortgage placed on the subject property for the purpose of construction of any improvements* shall be controlled and disbursed through 'Builder's Control' so that (appellees) shall be assured that said funds are used solely for the construction of said other improvements. * * *"
> (Emphasis supplied)

■ The Appellate Court is not bound by the interpretation of the questioned document as made by the trial court. We are free to substitute our own analysis therefore. LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966).

We agree with the Trustee's contention that there is nothing in the language cited above directing the Trustee to follow any particular course of action in dealing with any funds other than those resulting from a mortgage placed on the property for the purpose of new construction. The plaintiffs' contention, that this silence of the agreement as to directing of the trustee to deal with certain funds in a specified manner is ambiguous because it is at variance with their intent as expressed in the parol testimony, is not well founded in law.

■ The rule is that parol or extrinsic evidence is not admissible to add to, subtract from, vary or contradict contracts which are valid, complete, unambiguous and unaffected by accident or mistake. 32A C.J.S. Evidence § 851, p. 211. Where the parties have put their engagements into writing in such terms as to import a legal obligation without any uncertainty as to the object or extent of such agreement there is a presumption that all agreements and negotiations are merged into or superseded by the written instrument and the extent of undertaking of the parties is conclusively presumed to have been reduced to writing. All oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time it was completed, is rejected. Oberan v. Western Machinery Co., 65 Ariz. 103, 174 P.2d 745 (1946); Merryman v. Sears, 50 Ariz. 412, 72 P.2d 943 (1937). In this case the parties executed, after negotiations, a fifteen-page trust agreement together with two full pages of amendments.

■ The language quoted from this trust agreement is clear and unambiguous. The more particular rule is that if the agreement is silent on a provision or provisions which would be more likely than

not to have been included in the agreement, parol evidence will not be admitted to supply the missing provisions. The court must look to the intent of the parties to decide whether testimony as to the omitted provision should be admitted.

"In deciding on this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiations is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element." 9 Wigmore, Evidence § 2430 at 98 (3d Ed. 1940). Producers Livestock Loan Co. v. Idaho Livestock Auction, Inc., 230 F.2d 892 (9th Cir. 1956).

Here Hunter demonstrated sufficient business acumen to have recognized that there was something lacking in this complex fifteen-page trust agreement. He noticed this lack sufficiently to ask that the omission be rectified, and he had opportunity to read the amendment as it was drafted and appended to the agreement after his objection was heard. He cannot now be heard to say that it wasn't what he intended.

This court has often reiterated the rule that parties are responsible for their contracts and that the law protects and guards with great caution the written memorial of the contract. Apolito v. Johnson, 3 Ariz.App. 232, 413 P.2d 291 (1966) (modified on denial of rehearing, 3 Ariz. App. 358, 414 P.2d 442 (1966)).

It seems that plaintiffs here are the victims of harsh circumstances, but this fact cannot relieve them. Where the parties were competent to contract and did so at arms length, it is not the province of this court to act as a post-transaction guardian for either party. Apolito v. Johnson, supra.

Finding no ambiguity here, and merely finding that the agreement was silent as to this point, we cannot agree with the trial court's finding that the trustee abused its fiduciary duty in making a distribution to the buyer. Arizona law is clear that there are no duties impressed upon the trustee dehors the trust instrument, and that the trust instrument is the sole guide to which the trustee must look for his orders, and which orders he must strictly follow without question or hesitation. Valley National Bank v. Hartford Accident & Indemnity Co., 60 Ariz. 286, 136 P.2d 458 (1943).

The trust instrument involved in this situation at SECTION VI(D) referring to the mortgage liens placed on the instrument states:

"* * * the Trustee shall have no responsibility or liability for any liens, encumbrances, or rights to liens or encumbrances which may arise or be claimed by reason of such conveyance. *The trustee shall have no responsibility or liability for the expenditure of the proceeds of said mortgage loan provided for herein.*" (Emphasis supplied)

At SECTION XI(F) of the trust agreement we find the words:

"Trustee shall not have any liability to any Beneficiary or his successors or assigns on account of electing to act in accordance with any provision hereof, *as reasonably construed by Trustee,* regardless of whether or not such provision may subsequently be reformed or declared invalid or unenforceable or otherwise construed in any litigation or proceeding." (Emphasis supplied)

The Hunters claim that there was a breach of the duty owed by the Trustee to them in that the Trust agreement provided that they should have a prior right to payment of funds received by the Trustee from the trust property. The trust agreement provides at SECTION IX:

"All funds consisting of a portion of the trust estate shall be distributed by Trustee according to the following priorities:

* * * * * *

*Second Priority:* To First Beneficiary (appellees) until all of the unpaid princi-

pal and interest * * * have been paid in full.

*Third Priority:* To Second Beneficiary (Royal Properties) the remainder of said funds.

The Trustee correctly points out that SECTION I of the Trust Agreement spells out carefully that the trust estate shall consist:

"* * * of the legal title to said property and all funds received by Trustee from the lease or sale of said property or any interest in said property (including but not limited to funds received for the granting of licenses, easements or rights, and all rents, issues, or profits in, to or upon said property) and all funds received by Trustee as performance of the obligations of the Beneficiaries created by this Trust Agreement."

 A mortgage is not a conveyance of an interest in property and neither the legal nor the equitable title passes to the mortgagee. On the contrary, the Arizona rule is that a mortgage is a lien for the security of money or some other condition, and title to the property remains in the mortgagor until foreclosure. Steinfeld v. State, 37 Ariz. 389, 294 P. 834 (1930). Thus, proceeds from mortgages are not part of the "Trust Estate" as defined in the agreement, and so the priorities section has no relation to such proceeds.

We find that plaintiffs agreed to subordinate their claim to any mortgage "for refinancing" and since this is what has occurred, we cannot hold that Trustee breached its fiduciary duty in paying the money to Royal Properties.

Trustee claims that it is entitled to be paid $2,786 attorney fees pursuant to SECTION XI(C) of the Trust Agreement which provides in part that the beneficiaries:

"* * * shall indemnify and hold Trustee harmless of and from any and all liabilities incurred by it for any reason whatsoever in connection with the trust."

 Provisions of an instrument will be most strictly construed against the party who prepared it. Harford v. National Life & Casualty Ins. Co., 81 Ariz. 43, 299 P.2d 635 (1956). Reading this provision in context with the rest of the "hold harmless" section, we find that the main thrust of that section is towards protecting the trustee from costs and liabilities arising out of its position as holder of legal title to the trust property. The situation at hand does not seem to come within the purview of this section. Trustee was not sued here because it is holder of legal title to the property. Rather, it was sued for its alleged injurious conduct in paying out funds. The claim of plaintiffs was not spurious, although we have decided that it was not correct. We hold that the language in this section does not give the Trustee the right to be indemnified for attorney fees against good faith suits by the Beneficiary.

Reversed and remanded for proceedings not inconsistent with the view expressed herein.

· HATHAWAY, C. J., and MOLLOY, J., concur.