John M. ALEXANDER and Helen Alexander, Plaintiffs and Respondents,

v.

Lee Dell BROWN, Glen F. Brown, Wayne L. Brown, and Warren D. Brown, partners, dba BLW Company, Defendants and Appellants.

No. 17339.

Supreme Court of Utah.

April 23, 1982.

Ronald R. Stanger, Provo, for defendants and appellants.

Craig M. Snyder, Provo, for plaintiffs and respondents.

HALL, Chief Justice:

Defendants, through their agent, Boyd Sorensen, sold plaintiffs a subdivision lot in Provo. The recorded subdivision plat positioned the subject lot adjacent to a main road to the east and a side road to the north of the lot. Plaintiffs chose the lot from among several in the subdivision because they planned to build a house with a garage opening to the side rather than to the front and they needed a side road for convenient access to the garage.

Sorensen prepared on behalf of defendants an earnest money receipt and offer to purchase which listed improvements to be performed by defendants including "Sidewalk," "Curb and Gutter" and "Special Street Paving." After plaintiffs' purchase of the lot, defendants paved the main road to the east and constructed curb and gutter there but made no improvements on the area shown by the subdivision plat as a side road.

Provo City regulations require that all roads shown on the plat for defendants' subdivision be improved. Plaintiffs testified that they expected the city to enforce this requirement against defendants, but this did not happen. Four years after purchasing the property, plaintiffs brought this suit against defendants, alleging that they had agreed in the earnest money agreement to improve both the main road and the side road bordering plaintiffs' property and that they had breached the agreement. Plaintiffs were awarded $4,500 in damages, which the court determined to be the cost of making the necessary improvements to the side road at that time.

Defendants appeal the judgment in favor of plaintiffs, arguing first that the earnest money contract was ambiguous in its designation of the improvements to be made by defendants. The pertinent language of that contract reads:

> The following special improvements are included in this sale: ... Sidewalk ☒ , Curb and Gutter ☒ , Special Street Paving ☒ , ... Legend: Yes ☒ No ☐ except the following[:] no exceptions.

■ The phrase "special improvements," reasonably interpreted, refers to all streets bordering plaintiffs' property. In drafting the agreement, defendants' agent knew that the property had been advertised in the newspaper as "fully improved" and that the subdivision plat included a side road next to plaintiffs' property. Any intention to exclude from defendants' covenant the improvements pertaining to the side road is wholly inconsistent with the insertion of the words "no exceptions" at the end of the "special improvements" provision. The trial court correctly found that the contract is unambiguous in describing defendants' obligation to improve the side road.

■ Defendants also contend that the earnest money agreement was not integrated and that it was not intended to apply to the side road. In *Farr v. Wasatch Chemical Co.*, 105 Utah 272, 143 P.2d 281, 283 (1943), this Court discussed the criteria to be used in determining whether a given subject was intended to be covered by an agreement.

> In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; ...

The subject of street improvements is certainly "mentioned, covered, or dealt with" in the earnest money contract of the parties. Applying the *Farr v. Wasatch Chemical Co.* criteria, we therefore conclude that "the writing was meant to represent all of the transaction on that element." The trial court properly refused to consider extrinsic evidence in contradiction to this integrated agreement.

Defendants next argue that damages should be measured by the cost of road improvements in 1973 when defendants' performance was due rather than in 1980 when judgment was given. The trial court awarded plaintiffs $4,500, which it found to be the cost of paving the side road and

installing curb, gutter and sidewalk at the time of judgment. The court based its cost estimate on actual costs incurred by plaintiffs' neighbor for equivalent improvements in 1976, evidently determining that the 1980 cost to plaintiffs would be comparable. Defendants maintain that even the award of 1976 costs is excessive and that damages must be measured at the time of the alleged breach rather than at the time of trial.

Damages are properly measured by the amount necessary to place the non-breaching party in as good a position as if the contract had been performed.[1] The trial court correctly applied this rule by awarding plaintiffs the reasonable cost of finishing the side road at the time of judgment; any lesser amount would have been insufficient to restore to plaintiffs the benefits which they would have obtained from performance. The court's use of 1976 costs to calculate 1980 damages certainly did not result in an unreasonably high damage award. Defendants, who chose not to perform their obligation when costs were lower, cannot now complain about the increased cost of performance.

Defendants argue that plaintiffs should have mitigated their damages by having the road paved at their own expense during a period when paving costs were lower. However, plaintiffs had no obligation to mitigate damages by taking action which defendants themselves refused to take. Defendants had the same opportunity as plaintiffs to decrease damages by having the road finished promptly, yet declined to do so. Where the party having the primary duty for performance has the same opportunity to perform and the same knowledge of the consequences of nonperformance as the party to whom the duty is owed, he cannot complain about the failure of the latter to perform this duty for him.[2]

Defendants claim, finally, that the attorney's fee awarded to plaintiffs improperly included the costs incurred in the drafting of a faulty complaint. Defendants' argument ignores the fact that the fee awarded by the trial court represented a compromise between the amounts suggested by counsel on each side. Plaintiffs' attorney advocated $1,362.50 as a reasonable fee; defendants' attorney judged $750.00 to be reasonable; the trial court awarded $960.00. The court gave no indication that this amount included payment for preparation of the original defective complaint. In the absence of a showing of patent error or clear abuse of discretion, we do not disturb the judgment of the trial court.[3]

Defendants, who agreed in their earnest money contract "to pay all expenses of enforcing this agreement, or of any right arising out of the breach thereof, including a reasonable attorney's fee," are also liable to plaintiffs for reasonable attorney's fees incurred on appeal.[4]

The judgment appealed from is affirmed, and the case is remanded for the determination of a reasonable attorney's fee due plaintiff in responding to this appeal. Costs to plaintiff.

STEWART and OAKS, JJ., concur.

SAWAYA, District Judge, concurs in the dissenting opinion of HOWE, J.

DURHAM, J., does not participate herein.

HOWE, Justice (dissenting):

I dissent. It was error for the trial court to exclude from evidence testimony of the real estate salesman who sold the lot to the plaintiffs that in negotiating the sale with Mr. Alexander, it was understood and agreed that the improvements would not be

**1.** *Keller v. Deseret Mortuary Co.*, 23 Utah 2d 1, 455 P.2d 197 (1969).

**2.** See *McCarty v. United States*, 185 F.2d 520 (5th Cir. 1950); *Schneidt v. Absey Motors, Inc.*, N.D., 248 N.W.2d 792 (1976); *Ivester v. Family Pools, Inc., Bosco Indus.*, 262 S.C. 67, 202 S.E.2d 362 (1974).

**3.** *Beckstrom v. Beckstrom*, Utah, 578 P.2d 520 (1978).

**4.** *Management Services Corp. v. Development Associates*, Utah, 617 P.2d 406 (1980).

installed by the seller on the side street, but that Mr. Alexander would make those improvements himself. The trial court excluded the proffered testimony on the ground that the earnest money receipt and offer to purchase was an integrated agreement and that allowing the salesman to so testify would violate the parol evidence rule. The defendants' position was that the earnest money receipt and offer to purchase did not contain the full agreement of the parties.

It was error for the trial court to assume that the earnest money receipt and offer to purchase was an integrated agreement. The law on this point is summarized well in § 209 of Restatement of Contracts 2d:

> (1) An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement.
>
> (2) Whether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule.
>
> (3) Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression.

Comment c. states that whether a writing has been adopted as an integrated agreement is a question of fact to be determined in accordance with all the relevant evidence. Corbin on Contracts, Vol. 3, § 582 is to the same effect, i.e., that extrinsic evidence may always be admitted to prove that a writing was not assented to as a complete and accurate integration of the agreement of the parties.

The majority opinion in affirming the lower court's refusal relies upon *Farr v. Wasatch Chemical Co.*, 105 Utah 272, 143 P.2d 281 (1943). Actually, the language which the majority opinion quotes from that case are the words of Professor Wigmore as contained in § 2430 of his work on Evidence. Wigmore does not state that

extrinsic evidence may not be admitted to disprove that a writing is an integration. On the contrary, Wigmore's statement is fully consistent with § 209 of the Restatement of Contracts 2d, supra. In the last sentence of the quote from Wigmore in the majority opinion, he states, "If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; . . ." The word "presumably" was used advisedly. It allows for extrinsic evidence to be admitted to prove to the contrary. Wigmore is clear and definite on this point and does not support the position taken in the majority opinion.