**JOHN CALL ENGINEERING, INC., a Utah Corporation, Plaintiff and Appellant,**

v.

**MANTI CITY CORPORATION, a municipal corporation, Defendant and Appellee.**

No. 890384–CA.

Court of Appeals of Utah.

June 27, 1990.

Gordon K. Jensen, Dale F. Gardiner (argued), and Robert J. Debry, Robert J. Debry & Associates, Salt Lake City, for plaintiff and appellant.

Paul R. Frischknecht (argued), Manti, for defendant and appellee.

Before DAVIDSON, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Appellant John Call Engineering, Inc. ("Call") appeals a judgment in its favor, contending the award of damages was in an amount far below that to which it was entitled. We agree and vacate the judgment, with instructions to enter judgment in the amount minimally shown by the evidence, as requested by appellant.

## FACTS

This case concerns Call's claim that Manti breached a contract it had with Call for engineering services for a sewer construction project. The trial court originally concluded that there was no "meeting of the minds" concerning the contract and that it had been entered under a mutual mistake of fact. The Supreme Court disagreed. *John Call Eng'g, Inc. v. Manti City Corp.,*

743 P.2d 1205 (Utah 1987). In its opinion, the Supreme Court held the trial court's conclusion that there had been a mutual mistake of fact to be erroneous and remanded for trial on the issue of damages. *Id.* at 1211. The Supreme Court concluded that Manti had not been entitled, under the contract as amended, "to proceed with the project, avoid the valid agreement, and hire another engineer." *Id.* at 1209. The Supreme Court also held the "plain and unambiguous" language of the contract provided that Call would provide "engineering services for the design and installation of the sewer," as well as preparation of a preliminary sewer study which was completed prior to Manti's breach. 743 P.2d at 1207. *See also id.* at 1210 (Orme, J., concurring) (contract to be treated as one "for the installation of, and provision of all engineering services for, the complete sewer project").

On remand, a two-day jury trial was held to determine Call's damages. Call offered the testimony of David Thurgood, the engineer whose firm completed the project for Manti; Randall Peterson, a CPA; Mr. Call; and Charles Peterson, an economic consultant. Manti's case in chief consisted solely of testimony from David Thurgood. The jury awarded Call $13,440 plus prejudgment interest. On appeal, Call makes several arguments. First, it claims that the jury's award was based on an arbitrary application of the doctrine of mitigation, and that the issue of mitigation should not have been submitted to the jury given the evidence adduced at trial. Second, it claims that the trial court erred in allowing Manti to amend its answer at the outset of trial to include mitigation as an affirmative defense. Third, Call claims that the court erred in instructing the jury on calculating Call's damages. Finally, Call appeals the award of witness fees as being inadequate.[1]

## MITIGATION

■ In an action for damages for breach of contract, the amount of damages otherwise recoverable by plaintiff can be reduced if plaintiff succeeded in mitigating its damages or if it failed to properly mitigate its damages. "The doctrine of avoidable consequences, also referred to as mitigation of damages, generally operates to prevent one against whom a wrong has been committed from recovering any item of damage arising from the wrongful conduct which could have been avoided or minimized by reasonable means." *Angelos v. First Interstate Bank of Utah*, 671 P.2d 772, 777 (Utah 1983).

■ However, the burden of proving plaintiff has not mitigated its damages and that its award should be correspondingly reduced is on defendant. "The plaintiff has the burden of showing the contract breach and his damages, while, as a rule the defendant has the burden of proving that damages shown could have been minimized." D. Dobbs, *Remedies* § 12.6, at 830 (1973). *See Pratt v. Board of Educ.*, 564 P.2d 294, 298 (Utah 1977) ("Although plaintiff is obligated to minimize his damages, the burden is upon the party whose wrongful act caused the damages to prove anything in diminution thereof."). *But see Green v. Nelson*, 232 P.2d 776 (Utah 1951) (in breach of tuition agreement case, where information regarding amount of money saved by school for student's non-attendance was uniquely within the exclusive knowledge of the school, burden of proof shifted back to plaintiff school). "It is not a plaintiff's burden to produce the evidence on which any reduction of damages is to be predicated." *Comfort Homes, Inc. v. Peterson*, 37 Colo.App. 516, 549 P.2d 1087, 1090 (1976). *See also Barnes v. Lopez*, 25 Ariz.App. 477, 544 P.2d 694, 698 (1976).

■ "In order to submit the issue [of mitigation] to the jury, there must be competent evidence to show that the plaintiff failed to take reasonable efforts to mitigate his damages." *Barnes*, 544 P.2d at 698. In this case, Manti did not offer any evidence, through its own witness or on cross-examination, which would have allowed the

---

1. In view of our disposition, we need not consider other issues Call raises on appeal.

court to submit the issue to the jury.[2]  *Cf. Pratt,* 564 P.2d at 298 ("Because defendant failed to sustain its burden, by producing competent evidence proving plaintiff had not taken reasonable efforts to mitigate his damages; the court properly determined there was no factual issue concerning damages, to submit to the jury.").

Some further explanation of mitigation in the context of breach of contract may be helpful.  We note initially that in a contract case, the mitigation doctrine would have the most applicability to claims for special or consequential damages rather than to general damages.  However, Call did not pursue special or consequential damages at trial but only its general damages.

▪ In the context of general damages for breach of contract, which damages ordinarily will be the amount plaintiff would have received had the contract been completed less the expenses plaintiff saved by not having to perform,[3] the mitigation doctrine rarely applies.  In limited circumstances, however, general damages may be reduced by the amount of gains received by performing another contract which could not have been entered into *but for* defendant's breach of the prior contract and plaintiff's being thereby left free to perform the second contract.  However, the burden of proof is on defendant.  *See Comfort Homes,* 549 P.2d at 1090 (defendant had burden of proof to show that plaintiff could not have made profits on subsequent contract but for defendant's breach); *Sides v. Contemporary Homes,* 311 S.W.2d 117, 120 (Mo.Ct.App.1958) (simple fact that plaintiff "kept busy on other jobs" was

insufficient to show that plaintiff could not have made those profits but for defendant's breach of contract).

Although Call performed other contracts after Manti's breach, Manti did not present any evidence which would trigger this aspect of the mitigation doctrine.  The jury could therefore not reduce the amount of the award on this theory since it had no basis in the evidence to do so.  "[L]ost profits are not reduced by accepting other contracts, if no showing is made that the nondefaulting party could not have performed those contracts had there been no breach."  22 Am.Jur.2d *Damages* § 644, at 706 (1988).  *See also Sides,* 311 S.W.2d at 120 (when defendant claimed that plaintiff was not damaged by the contract breach because it had other jobs, the court held that "such subsequent gains were not the result of the defendant's breach and do not inure to the benefit of the defendant"); D. Dobbs, *Remedies* § 12.6, at 827 (1973) (aside from personal services contracts, "assumption [is] that the plaintiff could have performed such work even without the breach").

▪ At trial, both the court and Manti seemed to believe that the doctrine of mitigation allowed the jury to make a somewhat arbitrary reduction in the amount of damages if the jury believed the plaintiff failed to cut its losses in some undefined way.[4]  On the contrary, the doctrine requires defendant to show with specificity why the damages sought are not proper because of successful efforts to mitigate or a failure to reasonably mitigate.  Since

---

2. The trial court expressed concern about Manti's lack of evidence in the case.  It noted that while Manti had "no expert testimony at all in this case," Call "brought in experts.  They put in everything."  The trial court accurately anticipated the difficulty Manti would encounter as a result of its trial strategy: "What I'm saying is I think you put this Court in a very untenable position and if this case is appealed to the Supreme Court or the Court of Appeals, I think you put them in an untenable position. . . ."

3. "[B]reach of construction contract damages are based upon the total amount promised for the project, less the reasonable cost of completing it."  *Holman v. Sorenson,* 556 P.2d 499, 500

(Utah 1976).  "Where an owner breaches a construction contract by preventing the builder from doing the work the plaintiff's measure of damages is the contract price, less the amount it would have cost him to complete the performance of the contract."  *Sides v. Contemporary Homes,* 311 S.W.2d 117, 120 (Mo.Ct.App.1958).  *See also Sawyers v. FMA Leasing Co.,* 722 P.2d 773, 774 (Utah 1986) (per curiam).

4. The trial court instructed the jury: "John Call upon his first notice of breach of contract on March 23, 1982 had a duty to mitigate any damage he may have sustained.  This action requires a course of conduct on his part to cut his loss."

Manti had the burden to prove its mitigation theory, and it presented no discernible evidence on this point, Manti obviously did not carry its burden of proof. Accordingly, Call was entitled to recover the full amount of its general damages for breach of the contract in an amount shown by the evidence.

## AMENDMENT OF ANSWER

█ The foregoing analysis largely moots Call's argument regarding the trial court's decision to allow Manti to amend its answer, just before trial, to include mitigation as an affirmative defense.[5] This amendment would have benefitted Manti—and potentially prejudiced Call—only if Manti then offered *evidence* that Call had not, in fact, reasonably mitigated its damages. This Manti failed to do. Since the "failure to mitigate" defense was not proven, any error in permitting the eleventh-hour amendment proves to be harmless.[6]

## JURY INSTRUCTIONS

█ When defendant prevents plaintiff from completing its performance of a contract, the plaintiff is ordinarily entitled to recover as damages the net profit it lost, i.e., "the contract price, less the amount it would have cost him to complete the performance of the contract." *Sides v. Contemporary Homes*, 311 S.W.2d 117, 120 (Mo.Ct.App.1958). *See, e.g., Holman v. Sorenson*, 556 P.2d 499, 500 (Utah 1976).

There was ample evidence submitted to the jury regarding the amount of Call's damages. Call proved the number of hours that were actually spent on the project by Thurgood's firm after Call's termination and the total revenue Call would have received for such work given the hourly rates in the contract Call had with Manti. Mr. Call then testified as to the amount of money his company saved by not having to complete the contract. Testimony was also elicited concerning Call's usual profit margin and the lower profit margin realized by Thurgood's firm on this very project. Call properly argued that it was entitled to the amount it would have been paid less the expenses saved. Manti, on the other hand, argued its unsupported mitigation theory and emphasized that Call had already been paid for the portion of the contract that it had completed.[7]

█ Against this background, considerable care was required in instructing the jury. Not only should the court have withheld any instruction on mitigation as discussed above, it should also have instructed that Call's having been properly paid for the preliminary work it did was irrelevant in calculating the damages it sustained by Manti's refusal to let it perform the rest of the work called for in its contract. Moreover, the court should have been explicit in instructing the jury on how to calculate Call's general damages resulting from Manti's breach. The court did instruct the jury at length, and accurately, as to what *kind* of evidence it could consider in making its determination, but it failed to instruct regarding the precise standard for determining Call's damages and how to effectuate it.

The court did not necessarily need to give the jury one of the instructions proposed by Call, but it should have given an adequate instruction to the jury on how to

---

5. "Mitigation or failure to mitigate is an affirmative defense to be pleaded by the defendants." *Comfort Homes, Inc. v. Peterson*, 37 Colo.App. 516, 549 P.2d 1087, 1090 (1976). *Accord Pratt v. Board of Educ.*, 564 P.2d 294, 298 (Utah 1977).

6. Trial courts have great discretion regarding the amendment of pleadings. C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 1484, at 594–96 (1990). This court will not disturb a trial court's ruling unless there has been "an abuse of discretion resulting in prejudice." *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah Ct.App.1988). Nonetheless, amendments on the eve of trial are generally frowned upon. *See id.*

7. Call had completed and received payment for a preliminary study called for in the contract. It was upon the completion of this "first phase" of the contract that Manti breached its contract with Call by terminating any further performance by Call. That Call had been paid for the preliminary study was undisputed and was also largely irrelevant given the Supreme Court's characterization of the contract's scope and effect. *See also* note 8, *infra*.

use the evidence before it to calculate Call's damages. The prejudice resulting to Call is evidenced by the lack of any basis in the record for the jury's award—an award which is dramatically below what the evidence showed.

## CALL'S DAMAGES

■ It is true that Call's evidence regarding damages was not entirely uniform. However, the evidence clearly established general damages in an amount far exceeding what the jury awarded. As indicated, the starting point for all the calculations was the number of hours it actually took Thurgood's firm to complete the work, multiplied by Call's hourly rates under its contract. Variation resulted from differing views on how best to compute expenses which were saved, with Mr. Call testifying as to specific savings and the experts employing profit formulas. Testimony also varied as to whether the $22,000 paid to Call for its preliminary study needed to be dealt with in the damage equation.[8] Mr. Call's own testimony might support an award of just over $190,000, although a concession he made on cross-examination would take that figure to just under $170,000. Mr. Peterson's testimony would support an award of $136,334. Call's typical profit margin applied to the gross revenue figure suggested an award of $70,278. Finally, Thurgood's somewhat lower profit margin on this project, when applied to what would have been Call's gross revenue from completion of the project, would result in a general damage award of $56,377.60.

While plausible views of the evidence might have led to fixing a damage award at certain other levels within this broad range, no evidence of record, nor any disciplined view of the evidence of record, would support an award outside this range. Call made timely motions for a directed verdict, and for judgment notwithstanding the verdict, in the amount shown by the most conservative view of the evidence, $56,377.60. On appeal, although it would settle for a new trial, Call principally argues the court erred, given the lack of any contrary evidence, in not directing a verdict or judgment in this minimal amount and that we should remand with instructions to do so.

A trial court's refusal to direct a verdict will not be sustained when, viewing the evidence in the light most favorable to the party who resisted the motion, reasonable minds would necessarily accept the evidence relied on by the moving party. *See, e.g., White v. Fox,* 665 P.2d 1297, 1300 (Utah 1983). Similarly, a refusal to enter a judgment notwithstanding the verdict will be reversed when the party so moving is entitled to the judgment requested as a matter of law. *See, e.g., Hansen v. Stewart,* 761 P.2d 14, 17 (Utah 1988).

In this case, while reasonable minds could differ on whether Call was entitled to *more,* the evidence established it was clearly entitled to judgment in at least the amount of $56,377.60. Upon proper motions by Call, the court erred in not directing a verdict or granting judgment in that amount. Accordingly, we reverse the judgment which was entered on the jury's verdict and remand with instructions to enter judgment in the principal amount of $56,377.60.

## WITNESS FEES

■ Call appeals the award of witness fees for his experts and argues that the statutory witness fee was not enough to actually reimburse what he paid his witnesses and for his related costs, thereby precluding him from effective access to the courts. However, a court cannot ordinarily award extra compensation to expert witnesses unless there is an express statutory provision. *Frampton v. Wilson,* 605 P.2d 771, 774 (Utah 1980). No such statutory provision is claimed to apply in this case. Therefore, we see no error in the trial

---

8. Since Thurgood's work did not include a preliminary study, it does not appear to us that Call's payment for the study it performed needed to be subtracted in computing Call's damages. All of the hours Thurgood's firm spent on the project appear to be hours Call was entitled to work over and above what it had done in connection with the preliminary study.

court's decision not to tax as costs the fees paid by Call to its expert witnesses, insofar as the same exceeded the statutory fees payable to any witness.

## CONCLUSION

█ The judgment is vacated. We remand to the trial court with instructions to enter judgment in favor of Call in the amount of $56,377.60, to recalculate the amount of prejudgment interest, and to otherwise tailor its judgment as may be necessary or appropriate in light of the views expressed in this opinion.[9]

GREENWOOD, J., concurs.

DAVIDSON, J., concurs in the result.

---

**9.** In view of our disposition, it is unnecessary to consider Call's additional claim that prejudice resulted from Manti claiming, in closing argument, that it would be the taxpayers of Manti who would ultimately bear the burden of any judgment in Call's favor. It would in any event be difficult for us to meaningfully consider this argument since there is no record of the closing argument during which the statement allegedly occurred. We again note that closing arguments, like all other proceedings of courts of record, should occur *on* the record. "Although consistently making a record of all proceedings imposes a greater burden on the trial court and court reporters, it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made." *Briggs v. Holcomb,* 740 P.2d 281, 283 (Utah Ct.App.1987).