**LeBARON & ASSOCIATES, INC., Plaintiff,**

v.

**REBEL ENTERPRISES, INC., Defendant, Third–Party Plaintiff and Appellant,**

v.

**NEC INFORMATION SYSTEMS, INC., Third–Party Defendant and Appellee.**

**No. 910120–CA.**

Court of Appeals of Utah.

Dec. 18, 1991.

---

Kendall S. Peterson (argued), Kevin J. Fife, Michael Wilkins, Debbie A. Robb, Wilkins, Oritt & Ronnow, Salt Lake City, for defendant, third-party plaintiff and appellant.

Stephen B. Elggren (argued), Elggren & Van Dyke, Salt Lake City, for third-party defendant and appellee.

Before BILLINGS, Associate P.J., JACKSON and ORME, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

This is an appeal from a bench trial in which the trial court awarded third-party defendant NEC Information Systems, Inc. (NEC) a judgment against third-party plaintiff Rebel Enterprises, Inc. (Rebel), in NEC's counterclaim against Rebel for breach of contract. Rebel's sole claim on appeal is the trial court erred in failing to consider Rebel's affirmative defense that NEC did not mitigate its damages. Rebel requests this court to remand the case for further findings and conclusions on the issue of mitigation, or, alternatively, to find that NEC breached its duty to mitigate and thus remand for a reduction of contract damages consistent with NEC's failure to mitigate. We affirm.

## FACTS

The facts of this appeal arise from a third-party counterclaim. The original plaintiff's claim against Rebel (the original defendant) and Rebel's third-party claim against NEC are irrelevant to the issue on appeal. NEC's counterclaim against Rebel is a contract action to recover money NEC claims Rebel owes under an authorized

dealer agreement (Agreement)[1] that NEC and Rebel entered into on May 29, 1987. The Agreement authorized Rebel to operate in Utah as an authorized dealer of NEC's computer products, and the Agreement also provided the details for NEC and Rebel's continuing relationship.

Pursuant to the Agreement, on June 4, 1987, Rebel's president placed an order for computer equipment with NEC in the amount of $63,941. NEC was to ship the order to Rebel's Salt Lake City store. The order consisted of four separate items, three of which Rebel ordered to fill a specific purchase order at its Orem store. The fourth was an order for fifteen Power Mate II computers, which Rebel ordered to qualify for certain NEC advertising funds. After Rebel placed the order, one of Rebel's Orem employees contacted NEC and requested the first three items be expedited and shipped to Rebel's Orem store. NEC shipped the items as requested, and these items are not involved in this dispute between NEC and Rebel.

Contrary to Rebel's instruction, the fifteen Power Mate II computers were also sent by United Parcel Service priority to Orem, Utah, rather than to Salt Lake City. When the truckload of computers arrived in Orem, no Rebel employee was familiar with this shipment. Through miscommunication, an Orem employee directed the carrier to deliver the computers to Rebel's Boise, Idaho franchisee, Main Street Computers. The carrier followed these instructions and delivered the fifteen computers to Main Street Computers in Boise. Upon realizing the mistake, Rebel's president contacted one of the principals at Main Street Computers, informed him of the mistake, and instructed him to return the computers. Main Street Computers, however, was unwilling to return the computers and threatened legal action should Rebel attempt to recover them.

Almost immediately, Rebel notified NEC that the shipment of computers had been misdelivered, and that Main Street Computers had refused to return the computers. Rebel's president requested NEC to assist Rebel in retaking possession of the equipment. Specifically, Rebel's president wanted NEC to perfect its security interest in the computers, as allowed in the Agreement, and repossess the computers. NEC indicated the problem was Rebel's and, therefore, did not proceed as Rebel requested. Rebel was able to secure the return of some of the computers in late 1987. Ultimately, Main Street Computers filed bankruptcy, and no further computers nor proceeds were ever returned to Rebel.

As provided under the Agreement, NEC then agreed to inventory the computers that had been returned and issue a "return authorization" which would ultimately credit Rebel's account for the returned items. However, before the process was completed, the computers, among other property, were stolen from Rebel's Salt Lake store.

As part of a number of related contract claims, NEC filed a third-party counterclaim against Rebel asserting that Rebel had breached their Agreement by failing to either (1) return the computers for NEC to inventory or (2) pay for the computers. Rebel answered, asserting, inter alia, that NEC had breached its duty to mitigate damages by refusing to perfect and foreclose on its secured interest in the computers. At the conclusion of the bench trial, the judge awarded NEC damages in the amount Rebel owed on the fifteen computers, less other off-setting credits and judgments. In his bench decision, the trial judge indicated he did not think NEC had a secured interest in the computers because Rebel had not fulfilled certain requirements under the Agreement.[2] The trial

---

**1.** The Agreement actually consisted of several independent written and oral agreements and addenda to these agreements. For purposes of this appeal, however, it is sufficient to treat these agreements collectively.

**2.** Specifically, the judge found:

[The Agreement] was not a secured transaction because the provisions of [Agreement Paragraph 6.9 were] never implemented. That provision provided that the dealer [Rebel] grants NEC a security interest in the products. And it goes on to say, "Dealer shall execute, and cause to be filed, all instruments

judge, in ruling in favor of NEC, made no mention of any duty of NEC to mitigate its damages.

## ISSUE PRESERVED FOR APPEAL

■ On appeal, Rebel requests this court to remand the case for the trial court to make findings of fact and conclusions of law regarding its mitigation claim. NEC claims the issue of mitigation is not properly before this court as Rebel failed to sufficiently raise the issue of mitigation at trial in order to preserve its claim on appeal. We address this threshold issue of whether Rebel can raise its mitigation of damages claim on appeal.

Rebel asserts it properly presented the issue of mitigation below, citing three instances of such presentation. First, Rebel included NEC's failure to mitigate as an affirmative defense in its answer to NEC's third-party counterclaim.[3] Second, Rebel points to general testimony at trial regarding NEC's failure to assist Rebel in its attempt to retrieve the fifteen computers from Main Street Computers in Boise. Fi-

nally, Rebel claims it referred to NEC's failure to cooperate in a post-trial motion to amend the trial court's findings of fact and conclusions of law, and also in a motion for a new trial.[4] Rebel contends these references were sufficient to raise the issue of common law mitigation of damages before the trial court.

NEC asserts Rebel made *no* direct reference to the legal issue of mitigation at trial or in its post-trial motions, nor did it offer the court any legal analysis to support its mitigation theory or evidence to substantiate such a claim. NEC argues that before the trial court could rule on the issue of mitigation, Rebel had a burden to specifically show why NEC's damages were not proper due to NEC's failure to affirmatively mitigate its damages. NEC contends Rebel made no effort to meet this burden, and thus the trial court's damage award must stand.

■ To preserve a substantive issue for appeal[5], a party must timely bring the issue to the attention of the trial court, thus providing the court an opportunity to

---

or documents necessary to effect any such security interest; and acknowledge that in any event a copy of this agreement may be filed by [NEC] as a financial statement."

I doubt that very much because the goods that would constitute the security weren't identified, and I very much doubt that that would qualify under a UCC(1) filing.

3. Rebel's Answer to NEC's third-party counterclaim includes numerous briefly-described affirmative defenses, the last of which states in full: "[NEC's] claims are barred in that it has failed to take any actions to mitigate its damages."

4. In its request for amended findings of fact and conclusions of law, Rebel stated:

[A] finding should be made, that a security agreement existed immediately upon execution of the Authorized Dealer Agreement, that no further action was required by any party for the creation of said security agreement and that [NEC] had all of the responsibilities and duties in relation to the collateral that a secured party has. A further finding should be made that [NEC] had the right to request Rebel to take steps to perfect the security interest of [NEC], but that no steps were taken to perfect the security interest because [NEC] did not direct Rebel to do so. Further findings should be made that Rebel attempted to

get some merchandise from Main Street of Boise, and when threatened by the attorney for Main Street with criminal prosecution if Rebel tried anything, asked [NEC] to get involved in getting [NEC] merchandise back from Main Street Computers of Boise, and that [NEC] refused to do anything at all, stating that it was Rebel's problem.

In its motion for a new trial, Rebel asserted: 9–207(3) [of the UCC] provides that a secured party is liable for any loss caused by his failure to meet any obligations imposed by 9–207. The collateral was lost as Main Street Computers and its principals filed for bankruptcy. [NEC] could have proceeded against Main Street Computers and the principals for return of the collateral, but chose not to do so. As a result, the collateral was lost, and [NEC] should be the party held responsible for the loss of that collateral for its failure to act in a commercially reasonable manner in relation to collateral and its failure to use reasonable care in the custody and preservation of the collateral.

5. This analysis may differ from that required to preserve an evidentiary issue or an objection for appeal. Such issues are covered by specific rules of evidence. *See, e.g., State v. Johnson,* 821 P.2d 1150, 1161–62 (Utah 1991) (evidentiary objections may be waived under Utah Rule of Evid. 103(a)(1)).

rule on the issue's merits. *See Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667, 672 (Utah 1982); *James v. Preston,* 746 P.2d 799, 801–02 (Utah App.1987). "Issues not raised in the trial court in timely fashion are deemed waived, precluding [the appellate court] from considering their merits on appeal." *Salt Lake County v. Carlston,* 776 P.2d 653, 655 (Utah App.1989); *accord Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d 832, 837 (Utah 1984); *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1045 (Utah 1983). Further, the mere mention of an issue in the pleadings, when no supporting evidence or relevant legal authority is introduced at trial in support of the claim, is insufficient to raise an issue at trial and thus insufficient to preserve the issue for appeal. *James,* 746 P.2d at 801. This rule is " 'stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial.' " *Id.* (quoting *Bogacki v. Board of Supervisors,* 5 Cal.3d 771, 489 P.2d 537, 543–44, 97 Cal.Rptr. 657, 663–64 (1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1301, 31 L.Ed.2d 488 (1972)).

NEC principally relies on *James.*[6] In *James,* this court considered whether plaintiff James had sufficiently raised the claim of equitable mortgage at trial to preserve the issue for appeal. James had obliquely raised the issue of an equitable mortgage in his complaint, and during the bench trial, James' attorney made two brief references to the equitable mortgage theory. Further, James made no objection to the trial court's failure to rule on the issue. On appeal, this court concluded that these references were insufficient to have raised the issue below, and therefore the issue was not properly before the court on appeal. We stated:

> James supplied no legal authority dealing with equitable mortgages nor any showing of the relevance of the facts to an equitable mortgage theory during the course of the trial. The trial court made no ruling as to the existence of an equitable mortgage and James made no objection to this omission.... For an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it.

*Id.* at 802.

The same can be said of Rebel's treatment of the issue of mitigation of damages.[7] Rebel simply did not articulate nor litigate at trial the common law contractual duty to mitigate damages. The proceedings below were complicated and required the trial court to resolve numerous related claims. Rebel sought and obtained a judgment against NEC on an unrelated contractual claim, and Rebel asserted several affirmative defenses against NEC's counterclaim, including claims that: NEC was negligent in shipping the computers to Orem; NEC, not Rebel, owned the computers under the Agreement; NEC bore the risk of loss for the computers until they were delivered in Salt Lake City; and, under the Agreement, NEC had the duty to perfect a security interest in the merchandise. Unlike the issue of mitigation, Rebel vigorously pursued each of these theories below, ultimately losing on the merits of each. However, as in *James,* Rebel did not, during trial, raise "to a level of consciousness" the issue of mitigation of damages sufficient to allow the trial judge to consider it.

---

**6.** In 1982, the Utah Supreme Court decided another case substantially similar to *James.* In *Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667 (Utah 1982), an action to enforce an employee's covenant not to compete, the plaintiff employer appealed from an adverse ruling. Defendant also cross-appealed, contending that the covenant not to compete was contrary to public policy. The Utah Supreme Court refused to reach the issue raised by defendant because the issue had not been properly raised below. Although the issue was raised in defendant's answer, "no argument was made to the district court on this issue and no evidence was presented." *Id.* at 672. Therefore, the supreme court held the trial court did not have the opportunity to make any findings of fact or conclusions of law, and thus the issue was not properly before the court on appeal.

**7.** We note that Rebel's trial counsel is not the same counsel who now articulates the mitigation claim on appeal.

Additionally, Rebel's general reference in post-trial motions to NEC's failure to cooperate and perfect its security interest also was insufficient to put the mitigation question in issue. First, Utah courts have stated that reference to an issue in post-trial motions is insufficient to raise an issue not previously raised. *See Cunningham v. Cunningham*, 690 P.2d 549, 552 n. 2 (Utah 1984); *Barson*, 682 P.2d at 837–38. It would make little sense to allow a party to proceed at trial without submitting a legal theory to the court, and then allow that party to raise the issue following trial and require the court to reopen trial to consider the issue. Moreover, Rebel's references to NEC's failure to cooperate do not necessarily identify a common law contract mitigation theory. Rebel's post-trial motions focus on a commercial law claim under the UCC.

Furthermore, even if the issue of mitigation of damages had been sufficiently raised at trial to preserve the issue for appeal, Rebel failed to introduce evidence to meet its burden to specifically show to what extent NEC's damages could have been reduced. "[T]he burden of proving plaintiff has not mitigated its damages and that its award should be correspondingly reduced is on defendant." *John Call Eng'g, Inc. v. Manti City Corp.*, 795 P.2d 678, 680 (Utah App.1990). In *John Call*, this court discussed the evidentiary burden a party bears when the party raises failure to mitigate. There, plaintiff John Call Engineering claimed defendant Manti breached a construction contract. *Id.* at 679. At trial, Manti raised the issue of mitigation; however, it did not introduce specific evidence that would establish the extent to which damages should be reduced. Despite this failure, Manti sought and was granted a jury instruction on the issue of mitigation. On appeal, this court held that allowing the jury to decide the issue of mitigation, when there was insufficient evidence for the jury to reduce plaintiff's damages with some degree of precision, was error. *Id.* at 681. In reversing the jury's

reduction of damages, this court held that "the doctrine [of mitigation] requires defendant to show with *specificity* why the damages sought are not proper because of successful efforts to mitigate or a failure to reasonably mitigate." *Id.* (emphasis added).

Likewise, in this case, Rebel failed to introduce any evidence which the court could have used in calculating a reduction of NEC's damages due to NEC's failure to mitigate. Rather, like the defendant in *John Call*, Rebel asks that NEC's damages be reduced by generalizing that NEC could have recovered the computers. Rebel introduced no evidence that would assist the trial court in calculating how much NEC could have saved by attempting to recover the computers or how much such recovery efforts would have cost NEC. Accordingly, even if Rebel had properly raised the issue of mitigation below, Rebel did not introduce sufficient specific evidence to meet its burden under the doctrine of mitigation. The judgment appealed from is accordingly affirmed.[8]

JACKSON and ORME, JJ., concur.

---

8. Our resolution of this issue obviates the necessity to reach Rebel's other issues on appeal, namely, whether NEC breached a duty to mitigate its damages by refusing to repossess the fifteen computers from Main Street Computers.