2003 UT App 380

Noel COVEY, Plaintiff and Appellee,

v.

Almon COVEY, Defendant and Appellant.

No. 20020197–CA.

Court of Appeals of Utah.

Nov. 6, 2003.

Dena C. Sarandos, Larry R. Keller, and Christian J. Cannon, Cohne Rappaport & Segal, Salt Lake City, for Appellant.

James E. Magleby and Paxton R. Guymon, Miller Magleby & Guymon PC, Salt Lake City, for Appellee.

Before Judges JACKSON, BENCH, and DAVIS.

1. In the Agreement, the parties also memorialized a previous loan transaction, in which Noel

## OPINION

DAVIS, Judge:

¶1 Almon Covey (Almon) appeals from two trial court judgments entered on August 14, 2001, and February 8, 2002. We affirm.

## BACKGROUND

¶2 Almon is the older brother of Noel Covey (Noel). Sometime during 1991, Almon asked Noel to loan him 7219 shares of Sears, Roebuck and Co. stock (the Sears stock) that she owned. Almon wished to use the Sears stock to pledge as collateral on a margin account that he had with a securities brokerage firm, Covey & Co. Almon was a stockbroker with Covey & Co. and also its principal owner.

¶3 To document the loan of the Sears stock, Almon and Noel agreed to the terms of a document titled "Loan Accommodation Agreement" (the Agreement). Under the terms of the Agreement, the parties agreed that Noel would loan the Sears stock to Almon, provided that: (1) the Sears stock was "returned to [Noel] timely"; (2) Almon provide certain consideration to Noel; and (3) appropriate remedies were available to Noel in the event that Almon failed to "return the [Sears stock] timely." [1] The Agreement authorized Almon to pledge the Sears stock as collateral on his margin account at Covey & Co., "provided that [Almon] enter[ed] into an appropriate pledge agreement with" Covey & Co. The Agreement required that the terms of "an appropriate pledge agreement" must provide that "ownership of the [Sears stock] shall not be transferred unless and until [Covey & Co.] executes on the collateral to cover the required margin in accordance with the terms of the pledge agreement and the requirements under [Almon]'s margin account."

¶4 In defining the term of the loan, the Agreement stated that Almon was to return the Sears stock to Noel "within thirty days of the date of [the] Agreement." The Agreement provided that, in the event that Almon did not return the Sears stock to Noel within

loaned Almon $50,000. This portion of the Agreement is not part of this appeal.

thirty days, Almon "shall be required to pay to [Noel] the sum of $1,000 per day, for each day after such thirty[-]day period until the [Sears stock is] returned to [Noel]."

¶ 5 The only item specifically listed as "consideration" in the Agreement was Almon's agreement to bear sole responsibility for all damage or necessary repairs to a 1981 Jeep CJ-5, which Almon apparently loaned to Noel as part of the Agreement. However, the Agreement also stated that, at the same time the Agreement was executed, Almon delivered to Noel a "Warranty Deed and Notice of Interest in Real Property, ... duly executed by [Almon] in favor of [Noel]," concerning certain real property owned by Almon on Walker Lane in Holladay, Utah (the Walker Lane property). The Agreement provided that, following the execution of the Agreement, Noel was "authorized to record the Notice of Interest with the Salt Lake County Recorder's office," in order to provide notice that Noel possessed an interest in the Walker Lane property "pending [Almon's] return of the [Sears stock]." The Agreement further provided that, in the event that Almon did not return the Sears stock to Noel and pay any applicable "$1,000 per day" late fees "within sixty (60) days of [the] Agreement," Noel "shall be entitled to take title to the real property in lieu thereof and record the Warranty Deed."

¶ 6 The Agreement contained several miscellaneous provisions, but only two of them are relevant to this appeal. First, in reference to remedies, the agreement provided:

No failure or delay on the part of [Noel] in exercising any right, power, or remedy under [the] Agreement or any exhibits or other documents executed and delivered in connection herewith shall operate as a waiver thereof; or shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise thereof or the exercise of any other right, power, or remedy under [the] Agreement, the exhibits thereto, or any other document executed and delivered in connection herewith. The remedies provided in such documents are cumulative and not exclusive of any remedies provided by law.

Second, the Agreement provided:

In the event any party institutes any action or suit to enforce [the] Agreement or to secure relief from any default hereunder or breach hereof, the breaching party or parties shall reimburse the non-breaching party or parties for all costs, including reasonable attorney[ ] fees, incurred in connection therewith and in enforcing or collecting any judgment rendered therein.

¶ 7 The parties executed the Agreement on September 19, 1991, and Noel delivered the Sears stock to Almon. Noel then recorded her Notice of Interest in the Walker Lane property on September 20, 1991. During the term of the Agreement, there was never a margin call on Almon's margin account at Covey & Co., and Covey & Co. never executed on the Sears stock to satisfy the requirements of Almon's margin account. However, at some point after the execution of the Agreement, the Sears stock was sold. There was conflicting evidence presented at trial about when and how the sale of the Sears stock occurred, but it was undisputed that the sale of the stock did not occur pursuant to an execution on the Sears stock by Covey & Co. to satisfy the requirements of Almon's margin account at Covey & Co. Almon never returned the stock to Noel and, as a result, he was in breach of the Agreement. When Noel discovered that the Sears stock had been sold, she had the option of recording the Warranty Deed for the Walker Lane property; however, she chose not to do so.

¶ 8 Around the same time that Noel discovered the Sears stock had been sold, she also discovered a significant loss in an account she held at Covey & Co. This loss, which was unrelated to the Sears stock or the Agreement, was attributable to certain transactions that had occurred in her account. Noel was unaware that these transactions had taken place and did not authorize any of them. In her testimony at trial, Noel indicated that Almon was the only stockbroker at Covey & Co. that Noel ever authorized to make transactions in her account.

¶ 9 On October 28, 1996, Almon sold the Walker Lane property (the Walker Lane

sale). At some point prior to this date, Noel agreed to remove her Notice of Interest from the property so that the sale could proceed. The parties agreed in advance of the Walker Lane sale that Noel would receive the net proceeds from the sale. Although Noel obtained possession of the net proceeds of the sale, there was conflicting evidence presented at trial regarding the effect of her possession of the proceeds. Almon's testimony at trial was that he understood Noel's receipt of the proceeds to be her elected remedy under the Agreement. Almon also testified that he instructed Noel to repurchase the Sears stock herself with the proceeds. Noel's testimony at trial was that she held the proceeds only as a form of collateral to ensure that Almon would return the Sears stock to her and that she believed she would incur a tax liability if she repurchased the Sears stock herself with the proceeds.

¶ 10 Both before and after the Walker Lane sale, the parties had several discussions regarding Almon's breach of the Agreement. There was conflicting evidence presented at trial regarding the substance of these discussions; however, it is clear that the parties were never able to agree upon a course of action to resolve Almon's breach of the Agreement or upon the effect of Noel's receipt of the sale proceeds.

¶ 11 On November 20, 1997, Noel filed a complaint against Almon, alleging causes of action for breach of contract and breach of fiduciary duty.[2] Almon failed to arrive timely for the pretrial conference, and, as a result, the trial court entered his default.[3] After his default was entered at the pretrial conference, Noel withdrew the jury demand contained in her complaint. Accordingly, the trial court scheduled and conducted a bench trial after setting aside Almon's default.

¶ 12 On the first day of trial, at the request of Almon's trial counsel, the parties and the trial court had a discussion about the propriety of Noel's withdrawal of her jury demand while Almon was in default and whether the case should be tried to a jury or to the bench. At the conclusion of this discussion, the trial court ruled that Almon had waived his right to a jury trial and that the case would be tried to the bench.

¶ 13 After a two-day bench trial, the trial court made several findings and conclusions. In reference to Noel's claims relating to the Agreement, the trial court determined that: (1) the Agreement "is clear and unambiguous"; (2) Almon breached the Agreement; (3) the Agreement "anticipated only one circumstance in which the Sears [s]tock could be sold, namely, if Covey & Co. executed on [it] to satisfy" Almon's margin account at Covey & Co.; (4) under the Agreement, the parties intended "that the Sears [s]tock be returned" unless Covey & Co. executed on it to satisfy Almon's margin account at Covey & Co.; (5) "[t]he option of recording the Warranty Deed was not the sole remedy for [Almon's] failure to return the Sears [s]tock"; and (6) "specific performance should be granted to Noel ... and Almon ... shall purchase and replace the Sears [s]tock." In reference to Noel's duty to mitigate damages, the trial court determined that "Almon ... did not carry his burden of proof that Noel ... failed to take reasonable steps to mitigate her damages" and that "[t]here has been no failure by Noel ... to mitigate damages." In reference to Noel's claims for breach of fiduciary duty, the trial court determined that "[a]s [Noel's] stockbroker, Almon ... owed fiduciary duties to his customer, Noel"; that these "fiduciary duties were owed by him, personally and individually, to his customer, Noel"; and that Noel "proved by a preponderance of the evidence that Almon ... violated his fiduciary duties to [Noel] and that she was damaged by this breach of fiduciary duties."

¶ 14 In accordance with these determinations, the trial court entered judgment against Almon, in relevant part, for: (1) Al-

2. Noel later filed an amended complaint, but it did not alter the causes of action.

3. Although two attorneys who represented Almon at trial were present at the pretrial conference, neither of them had entered an appearance of counsel for Almon with the trial court. During the pretrial conference, these attorneys indicated to the trial court that they were appearing at the pretrial conference only as "friend[s] of the court." Accordingly, the trial court could not and did not allow them to appear on behalf of Almon at the pretrial conference.

mon's specific performance under the Agreement; (2) damages for the losses incurred in Noel's account at Covey & Co., plus interest; (3) Noel's lost dividends on the Sears stock, plus interest; and (4) Noel's attorney fees and costs. Almon appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 15 First, Almon argues that the trial court erred in ruling that he waived his right to a jury trial. "We review the trial court's finding that [he] waived [his] right to a jury trial for an abuse of discretion." *Aspenwood, L.L.C. v. C.A.T., L.L.C.,* 2003 UT App 28, ¶ 33, 73 P.3d 947, *cert. denied,* 72 P.3d 685 (Utah 2003).

¶ 16 Second, Almon argues that the trial court misinterpreted the terms of the Agreement. Almon further argues that, based upon this misinterpretation, the trial court made certain findings of fact that are inconsistent and not supported by sufficient evidence. "Interpretation of the terms of a contract is a question of law. Thus, we accord the trial court's legal conclusions regarding the contract no deference and review them for correctness." *Nova Cas. Co. v. Able Constr., Inc.,* 1999 UT 69, ¶ 6, 983 P.2d 575. "[W]e review the trial court's findings of fact for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *ProMax Dev. Corp. v. Mattson,* 943 P.2d 247, 255 (Utah Ct.App.1997).

¶ 17 Third, Almon argues that the trial court erred in determining that Noel had not failed to mitigate her damages. "[W]e review the trial court's legal conclusions for correctness, granting [them] no particular deference...." *Id.* "On the other hand, we review the trial court's findings of fact for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Id.* For a mixed question of law and fact, which requires a trial court to determine "whether a given set of facts comes within the reach of a given rule of law," *State v. Pena,* 869 P.2d 932, 936 (Utah 1994), "we

[still] review legal questions for correctness, [but] we may ... grant a trial court discretion in its application of the law to a given fact situation." *Jeffs v. Stubbs,* 970 P.2d 1234, 1244 (Utah 1998).

¶ 18 Fourth, Almon argues that the trial court abused its discretion by ordering specific performance. "Specific performance as a remedy will stand and will not be upset on appeal in the absence of an abuse of discretion." *Spears v. Warr,* 2002 UT 24, ¶ 42, 44 P.3d 742.

¶ 19 Fifth, Almon argues that, in addressing one of Noel's claims unrelated to the Agreement, the trial court erred in determining that he was personally liable for damages resulting from his breach of fiduciary duty owed to Noel. "[W]e review the trial court's legal conclusions for correctness, granting [them] no particular deference...." *ProMax,* 943 P.2d at 255. "On the other hand, we review the trial court's findings of fact for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Id.* For a mixed question of law and fact, which requires a trial court to determine "whether a given set of facts comes within the reach of a given rule of law," *Pena,* 869 P.2d at 936, "we [still] review legal questions for correctness, [but] we may ... grant a trial court discretion in its application of the law to a given fact situation." *Jeffs,* 970 P.2d at 1244.

## ANALYSIS

### I. Waiver of Jury Trial

¶ 20 Almon argues that the trial court erred in ruling that he waived his right to a jury trial. Even if Almon is correct in his assertion that the trial court abused its discretion by making this ruling, his argument fails to demonstrate how this alleged error was harmful or prejudicial to him in any way.

¶ 21 "Harmless error is defined ... as an error that is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 796 (Utah

1991) (quotations and citations omitted). "Put in other words, an error is harmful only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict." *Id.* "On appeal, the appellant has the burden of demonstrating an error was prejudicial—that there is a reasonable likelihood that the error affected the outcome of the proceedings." *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 489 (Utah Ct.App.1991) (quotations and citation omitted), *aff'd*, 862 P.2d 1342 (Utah 1993).

 ¶ 22 Because Almon has failed to carry his burden under our harmless error analysis by demonstrating that the alleged error committed by the trial court was prejudicial, his argument is without merit and we affirm the ruling of the trial court.[4]

## II. Interpretation of Agreement and Findings of Fact

¶ 23 Almon argues that the trial court misinterpreted the basic terms of the Agree-

ment, and that, because of this misinterpretation, the trial court made certain findings of fact that are inconsistent and not supported by sufficient evidence. First, Almon asserts that the trial court improperly determined that the Agreement anticipated only one circumstance in which Noel agreed to the sale of the Sears stock. Second, Almon asserts that the trial court improperly determined that the Agreement did not provide Noel's exclusive remedy once she received the Walker Lane sale proceeds and that, based upon this determination, the trial court erred when it found that: (1) Noel consented to remove her Notice of Interest from the Walker Lane property so that the Walker Lane sale could proceed, but only if the net proceeds from the sale "were to be left with her as a form of collateral and security for Almon's duty to return the Sears [s]tock and restore her to the position she would have been in had he timely returned the Sears [s]tock"; (2) Noel "retained the net proceeds of the Walker Lane [s]ale as a form of es-

---

4. Even if we were to reach the merits of this argument, we would uphold the trial court's ruling. Although we may disagree with the trial court's use of the term "waiver," we agree with its conclusion that, under the facts of this case, Almon was not entitled to a jury trial.

Rule 38 of the Utah Rules of Civil Procedure governs the right to a jury trial. In *Amica Mutual Insurance Co. v. Schettler*, we considered the effect of rule 38 upon facts similar to those of this case. *See* 768 P.2d 950, 962–64 (Utah Ct. App.1989). In *Schettler*, the "[plaintiff] requested a jury trial and subsequently withdrew its request following the entry of [defendant]'s default. Thereafter, [defendant] requested a jury trial." *Id.* at 963. In identifying the appropriate rule to apply to the facts of *Schettler*, we stated that "[r]ule 38(b) ... provides that any party may demand a trial by jury and subsection (d) provides that once made, a demand for a jury trial may not be withdrawn without the consent of [both] parties." *Schettler*, 768 P.2d at 963; *see* Utah R. Civ. P. 38(b), (d). We concluded, however, that "the consent requirement of [rule] 38(d) does not apply once default has been entered" and that the trial court properly allowed the plaintiff "to unilaterally withdraw its jury demand following the entry of [defendant's] default." *Schettler*, 768 P.2d at 963.

In this case, Noel's complaint included a jury demand. When Almon failed to arrive timely for the pretrial conference, the trial court entered his default. It was after the entry of Almon's default that Noel withdrew her jury demand. In accordance with the holding of *Schettler*, we conclude that "the consent requirement of [rule]

38(d) does not apply once default has been entered" and that the trial court properly allowed Noel "to unilaterally withdraw [her] jury demand following the entry of [Almon's] default." *Id.*

In response to *Schettler*, Almon argues that its holding is inapplicable in this case because the trial court's decision to set aside Almon's default "mandates that the parties be returned to the status quo ante" under *Erickson v. Schenkers International Forwarders, Inc.*, 882 P.2d 1147, 1149 (Utah 1994). To return the parties to the "status quo ante," *id.*, Almon argues that the trial court must disregard Noel's withdrawal of her jury demand, thereby rendering the analysis and holding of *Schettler* inapplicable to this case. Almon's reliance upon *Erickson* is misplaced and his argument is without merit. *Erickson* does not stand for the proposition that a decision to set aside an entry of default "mandates that the parties be returned to the status quo ante." *Erickson* addressed a motion to set aside a default judgment, *see id.* at 1147, not an entry of default. *See Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 940 n. 4 (Utah 1998) (describing difference between entry of default and entry of default judgment). Moreover, the *Erickson* court used the term "status quo ante" in a completely different context than the one asserted by Almon. *See Erickson*, 882 P.2d at 1149 (determining that there was a "restoration of the status quo ante" when two of the three requirements were satisfied under the "excusable neglect" standard for setting aside a default judgment under rule 60 of the Utah Rules of Civil Procedure). Consequently, the holding of *Erickson* has no application in this case.

crow, collateral and security for [Almon's] obligations to repurchase and restore the Sears [s]tock ..., and for obligations of [Almon] to her"; and (3) Noel "did not retain the net sales proceeds of the Walker Lane sale pursuant to any common understanding, or any accord and satisfaction, with Almon ... as satisfaction of any of [Almon's] debts."

¶ 24 After reviewing the Agreement, we conclude that the trial court's interpretation of it was correct. We also conclude that the findings Almon challenges are consistent with one another and supported by sufficient evidence.

¶ 25 First, the trial court properly determined that the Agreement "anticipated only one circumstance in which the Sears [s]tock could be *sold*, namely, if Covey & Co. executed on the Sears [s]tock to satisfy margin requirements in [Almon's] margin account at Covey & Co." (Emphasis added.) Paragraph 1 is the only portion of the Agreement that discusses a sale or transfer of ownership of the Sears stock and it states:

> [Noel] authorizes [Almon] to deliver [the Sears stock] to the brokerage firm as collateral on [Almon's] margin account, provided that [Almon] enters into an appropriate pledge agreement with the brokerage firm under the terms of which ownership of the [Sears stock] shall not be transferred unless and until the brokerage firm executes on the collateral to cover the required margin in accordance with the terms of the pledge agreement and the requirements under [Almon's] margin account.

The remainder of the Agreement does not discuss a sale or transfer of ownership of the Sears stock, but instead discusses events where Almon "fails to return" or "does not return" the Sears stock to Noel. This demonstrates that the parties intended to identify one specific circumstance where they agreed that the Sears stock could be sold—Covey & Co.'s execution on the Sears stock to satisfy Almon's margin account—and separate it from all other circumstances in which Almon failed to return the Sears stock to Noel. Although Almon's failure to return the Sears stock could have resulted from a sale of some kind, the Agreement specifies only one cir-

cumstance in which Noel agreed to a sale. Otherwise, Noel agreed and expected Almon to return the Sears stock to her.

¶ 26 Second, the trial court properly determined that Noel's receipt of the Walker Lane sale proceeds was not her exclusive remedy under the Agreement. Paragraph 5 of the Agreement states that, in the event Almon failed to return the Sears stock to Noel, she was "*entitled* to take title to the [Walker Lane property] in lieu" of the Sears stock. (Emphasis added.) Paragraph 6(c) of the Agreement states that "any single or partial exercise of any ... remedy" shall not "preclude ... the exercise of any other ... remedy under [the] Agreement" and that the remedies provided in the Agreement "are cumulative and not exclusive of any remedies provided by law." Under Paragraph 5, Noel was entitled to take title to the Walker Lane property or, alternatively, the proceeds from the Walker Lane sale when Almon failed to return the Sears stock; however, she was not required to do this as her sole, or even partial, remedy under the Agreement. Under Paragraph 6(c), her receipt of the Walker Lane sale proceeds was not her exclusive remedy under the Agreement because she was not precluded from exercising any other remedy under the Agreement or provided by law. Moreover, as discussed below, the trial court was presented with sufficient evidence to support its finding that Noel received the Walker Lane sale proceeds not as a remedy or as an accord and satisfaction, but rather as substitute collateral to ensure that Almon would return the Sears stock to her.

¶ 27 Finally, we conclude that the findings of fact challenged by Almon are consistent with one another and supported by sufficient evidence in the record before us. In order to successfully challenge the trial court's findings of fact, Almon "must first marshal all the evidence in support of the finding[s] and then demonstrate that the evidence is legally insufficient to support the finding[s] even when viewing it in a light most favorable to the court below." *ProMax Dev. Corp. v. Mattson,* 943 P.2d 247, 255 (Utah Ct.App.1997) (quotations and citations omitted).

¶ 28 The portions of the three challenged findings quoted in Almon's brief are taken out of context and Almon's argument misapprehends the findings in several instances.[5] When read together in their entirety, the three findings are entirely consistent with one another. In addition, the three findings are supported by the evidence presented at trial. Although Almon marshals the evidence in support of the findings, he does not demonstrate that this evidence is "legally insufficient to support the finding[s] even when viewing it in a light most favorable to the court below." *Id.* (quotations and citations omitted). Instead, Almon argues the evidence supporting his position and states that the trial court "ignored" this evidence because of its misinterpretation of the Agreement. Because we have already concluded that the trial court's interpretation of the Agreement is proper, Almon's argument is an attempt to have us reconsider conflicting evidence presented at trial. We note that

> [t]rial courts are accorded wide latitude in determining factual matters. They are in the best position to assess the credibility of the witnesses and to gain a sense of the proceeding as a whole. Where contradictory testimony is offered . . ., the fact finder is free to weigh the conflicting evidence presented and to draw its own conclusions.

*Valcarce v. Fitzgerald,* 961 P.2d 305, 314 (Utah 1998) (quotations and citations omitted). Almon's argument "is nothing but an attempt to have this [c]ourt substitute its judgment for that of the trial court on a contested factual issue. This we cannot do under Utah Rule of Civil Procedure 52(a)." *Newmeyer v. Newmeyer,* 745 P.2d 1276, 1278 (Utah 1987); *see ProMax,* 943 P.2d at 255 ("To succeed in its challenge to findings of fact, [appellant] may not simply reargue its position based on selective excerpts of evidence presented to the trial court."). We conclude that the three challenged findings are not "against the clear weight of the evidence" and, therefore, are not clearly erroneous. *ProMax,* 943 P.2d at 255.

### III. Mitigation of Damages

¶ 29 Almon argues that the trial court erred in determining that Noel had not failed to mitigate her damages.

> Damages awarded for breach of contract should place the nonbreaching party in as good a position as if the contract had been performed. However, under the doctrine of unavoidable consequences the nonbreaching party has an active duty to mitigate his damages, and he may not, either by action or inaction, aggravate the injury occasioned by the breach.

*Mahmood v. Ross,* 1999 UT 104, ¶ 31, 990 P.2d 933 (quotations and citations omitted). In order to satisfy the duty to mitigate damages, a nonbreaching party must make "reasonable efforts and expenditures." *Madsen v. Murrey & Sons Co.,* 743 P.2d 1212, 1214 (Utah 1987) (quotations and citations omitted); *see Angelos v. First Interstate Bank of Utah,* 671 P.2d 772, 777 (Utah 1983) (stating

---

5. In reference to the second challenged finding, Almon's brief states that it stands for the proposition that "the funds were held pursuant to an escrow agreement." Although the trial court used the term "escrow" in this finding, that does not indicate that an "escrow agreement" was created. The finding states that the proceeds of the Walker Lane sale were held by Noel "as a form of escrow, collateral and security." When read in context with the first challenged finding, which states that the proceeds of the Walker Lane sale were held by Noel "as a form of collateral and security," it is clear that the second challenged finding does not reference an "escrow agreement" in the literal or legal sense.

In reference to the first and third challenged findings, Almon attempts to persuade us that they contradict one another. Almon asserts that because the first challenged finding "depicts an agreement" between the parties and the third challenged finding indicates that there was no "common understanding" between the parties, they are inconsistent and cannot both be correct. Almon misapprehends these two findings. The first challenged finding indicates that there was an agreement between the parties that Noel would remove her Notice of Interest on the Walker Lane property so that the Walker Lane sale could proceed, provided that she could retain the net sale proceeds as a form of collateral and security for Almon's duty to return the Sears stock to her. The third challenged finding indicates that there was no "common understanding, or any accord and satisfaction" between the parties under which Noel would retain the Walker Lane sale proceeds "as satisfaction of any of [Almon's] debts." These two findings clearly reference different matters and, therefore, are not contradictory.

that mitigation of damages requires non-breaching party to avoid damages by "reasonable means"). "However, the burden of proving [that the] plaintiff has not mitigated ... damages ... is on defendant." *John Call Eng'g, Inc. v. Manti City Corp.*, 795 P.2d 678, 680 (Utah 1990). "It is not a plaintiff's burden to produce the evidence on which any reduction of damages is to be predicated." *Id.* (quotations and citations omitted).

¶ 30 Although Noel could have used the Walker Lane sale proceeds to repurchase the Sears stock, she had no obligation to do so under the Agreement or under her duty to mitigate damages. Almon, "who chose not to perform [his] obligation when costs were lower, cannot now complain about the increased cost of performance." *Alexander v. Brown*, 646 P.2d 692, 695 (Utah 1982). Noel was under

> no obligation to mitigate damages by taking action which [Almon himself] refused to take. [Almon] had the same opportunity as [Noel] to decrease damages ..., yet declined to do so. Where the party having the primary duty for performance has the same opportunity to perform and the same knowledge of the consequences of nonperformance as the party to whom the duty is owed, he cannot complain about the failure of the latter to perform this duty for him.

*Id.*

¶ 31 The trial court determined that "[Almon] did not carry his burden of proof that [Noel] failed to take reasonable steps to mitigate her damages." The trial court properly placed the burden of proof on the issue of mitigation of damages upon Almon, *see John Call Eng'g, Inc.*, 795 P.2d at 680, and there is sufficient evidence in the record before us to support the trial court's determination that Almon did not carry his burden of proving that Noel failed to make "reasonable efforts and expenditures" to mitigate her damages. *Madsen*, 743 P.2d at 1214 (quotations and citations omitted). Therefore, we conclude that the trial court properly determined that Noel did not fail to mitigate her damages.

## IV. Specific Performance

¶ 32 Almon argues that the trial court abused its discretion by ordering specific performance. Almon asserts that specific performance was inappropriate because he was placed in an "unfair position" when Noel retained the Walker Lane sale proceeds, which prevented him from repurchasing the Sears stock, and was able "to wait and see whether the price of Sears stock went up or down before filing a lawsuit" against Almon. "Specific performance is a remedy of equity which is addressed to the sense of justice and good conscience of the [trial] court, and accordingly, considerable latitude of discretion is allowed in [the] determination as to whether it shall be granted and what judgment should be entered...." *Morris v. Sykes*, 624 P.2d 681, 684 (Utah 1981).

¶ 33 As we have noted, while Noel's possession of the Walker Lane sale proceeds may have created difficulties for Almon in repurchasing the Sears stock, she had no obligation under the Agreement to use the proceeds to repurchase the Sears stock, either on her own or at Almon's direction. Evidence was presented at trial indicating that Noel had tax liability concerns about repurchasing the Sears stock herself with the Walker Lane sale proceeds, while at the same time having concerns about giving the proceeds to Almon to repurchase the Sears stock for her in the absence of a written agreement requiring him to do so. The trial court determined, and we agree, that Noel held the Walker Lane sale proceeds as a form of collateral to ensure that her desired remedy under the Agreement—specific performance—was fulfilled. Therefore, we conclude that under these circumstances, the trial court did not abuse its discretion by granting specific performance.

## V. Personal Liability

¶ 34 Almon argues that, in addressing one of Noel's claims unrelated to the Agreement, the trial court erred in determining that he was personally liable for damages resulting from his breach of fiduciary duty owed to Noel. In essence, Almon argues that the trial court was required to find that the

corporate veil of Covey & Co. should be pierced as a prerequisite to finding that Almon was personally liable for his breach of fiduciary duty to Noel.

¶ 35 Almon's argument is misplaced. Noel's amended complaint contained a cause of action against Almon, not Covey & Co., for his breach of fiduciary duty to Noel. Further, there is evidence in the record before us that supports the trial court's determinations that Almon breached a fiduciary duty he owed to Noel and that he was thereby personally liable for the damages resulting from this breach. Therefore, we conclude that the trial court properly determined that Almon was personally liable for damages resulting from his breach of fiduciary duty owed to Noel.

## VI. Attorney Fees

¶ 36 Noel requests attorney fees on appeal. "[A] provision for payment of attorney[ ] fees in a contract includes attorney[ ] fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract...." *Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980). "In addition, when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (quotations and citations omitted). Because the Agreement provides for attorney fees and because Noel was awarded attorney fees below, we conclude that she is entitled to reasonable attorney fees incurred as a result of this appeal.

## CONCLUSION

¶ 37 First, we conclude that even if the trial court erred by finding that Almon had waived his right to a jury trial, it was harmless error. Second, we conclude that the trial court correctly interpreted the Agreement and that the three findings Almon challenges are not clearly erroneous. Third, we conclude that the trial court's finding that Noel had not failed to mitigate her damages was not clearly erroneous. Fourth, we conclude that the trial court did not abuse its discretion in ordering specific performance. Fifth, we conclude that the trial court cor-

rectly ruled that Almon was personally liable for the damages resulting from his breach of fiduciary duty to Noel. Finally, we conclude that Noel is entitled to reasonable attorney fees incurred as a result of this appeal and we remand for the limited purpose of determining this amount.

¶ 38 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and RUSSELL W. BENCH, Judge.